| STATE OF INDIANA | ) | CLINTON COUNTY SUPERIOR COURT |
|---|---|---|
| | ) | |
| COUNTY OF CLINTON | ) | CAUSE NO: 12D01-1206-CT-_____ |

12D01 1206 CT 000640

DIANA ANES, PERSONAL REPRESENTATIVE )
OF THE ESTATE OF DENNIS ANES, )
DECEASED, )
    Plaintiff, )

v. )

THE COUNTY OF CLINTON, JEFF WARD, )
AS THE SHERRIFF OF CLINTON COUNTY, )
THE CLINTON COUNTY SHERRIFF'S )
DEPARTMENT, STEVE CATRON, KREIG KING )
and KREIGH SLOGGETT, )
    Defendants. )

**FILED**

JUN 2 7 2012

*Sheri N. Crews*
CLERK CLINTON SUPERIOR COURT

## SUMMONS

The State of Indiana to:    Clinton County, c/o Clinton County Commissioners

Address:  125 Courthouse Square, Frankfort, IN  46041

    You have been sued by the person named Plaintiff, in the court stated above.  The nature of the suit against you is stated in the complaint which is attached to this document.  It also states the demand which the plaintiff has made and wants from you.

    You must answer the complaint in writing, by you or your attorney, within twenty (20) days, commencing the day after you receive this summons, or judgment will be entered against you for what the plaintiff has demanded.

    If you have a claim for relief against the plaintiff arising from the same transaction or occurrence, you must assert it in your written answer.

Dated:  JUN 2 9 2012 , 2012

*Sheri N. Crews*
Clerk, Clinton Superior Court

Service by:  CERTIFIED MAIL

Attorney for Plaintiff:
Steven P. Meyer
Ball-Eggleston, P.C.
201 Main Street, Suite 810
P.O. Box 1535
Lafayette, IN  47902
(765) 742-9046

Courthouse
Courthouse Square
Frankfort, IN  46041
765-659-6340

STATE OF INDIANA    )         CLINTON COUNTY SUPERIOR COURT
                    )
COUNTY OF CLINTON   )         CAUSE NO:  12D01-1206-CT-_____

DIANA ANES, PERSONAL REPRESENTATIVE )     **12D01 1206 CT 000640**
OF THE ESTATE OF DENNIS ANES,       )
DECEASED,                           )
          Plaintiff,                )
                                    )
v.                                  )
                                    )
THE COUNTY OF CLINTON, JEFF WARD,   )
AS THE SHERIFF OF CLINTON COUNTY,   )              **FILED**
THE CLINTON COUNTY SHERIFF'S        )
DEPARTMENT, STEVE CATRON, KREIG KING)           JUN 2 7 2012
and KREIGH SLOGGETT,                )
          Defendants.               )         ~Sheri M. Crews~
                                               CLERK CLINTON SUPERIOR COURT

## SUMMONS

The State of Indiana to:     Sherriff Jeff Ward

Address: 301 E. Walnut Street, Frankfort, IN 46041

    You have been sued by the person named Plaintiff, in the court stated above.  The nature of the suit against you is stated in the complaint which is attached to this document.  It also states the demand which the plaintiff has made and wants from you.

    You must answer the complaint in writing, by you or your attorney, within twenty (20) days, commencing the day after you receive this summons, or judgment will be entered against you for what the plaintiff has demanded.

    If you have a claim for relief against the plaintiff arising from the same transaction or occurrence, you must assert it in your written answer.

Dated: __JUN 2 9 2012__, 2012          ~Sheri M. Crews~
                                        Clerk, Clinton Superior Court

Service by:  CERTIFIED MAIL

Attorney for Plaintiff:
Steven P. Meyer
Ball-Eggleston, P.C.
201 Main Street, Suite 810
P.O. Box 1535                           Courthouse
Lafayette, IN  47902                    Courthouse Square
(765) 742-9046                          Frankfort, IN  46041
                                        765-659-6340

STATE OF INDIANA    )         CLINTON COUNTY SUPERIOR COURT
                    )
COUNTY OF CLINTON   )         CAUSE NO: 12D01-1206-CT-_____

                                      **12D01 1 2 0 6 CT 0 0 0 6 4 0**

DIANA ANES, PERSONAL REPRESENTATIVE )
OF THE ESTATE OF DENNIS ANES,        )
DECEASED,                            )
        Plaintiff,                   )
                                     )         **FILED**
v.                                   )
                                     )         **JUN 2 7 2012**
THE COUNTY OF CLINTON, JEFF WARD,    )
AS THE SHERIFF OF CLINTON COUNTY,    )         Sherri M. Crews
THE CLINTON COUNTY SHERIFF'S         )         CLERK CLINTON SUPERIOR COURT
DEPARTMENT, STEVE CATRON, KREIG KING )
and KREIGH SLOGGETT,                 )
        Defendants.                  )

## SUMMONS

The State of Indiana to:      Kreig King

Address:  c/o Clinton County Sheriff's Department, 301 E. Walnut Street, Frankfort, IN  46041

        You have been sued by the person named Plaintiff, in the court stated above.  The nature of
the suit against you is stated in the complaint which is attached to this document.  It also states the
demand which the plaintiff has made and wants from you.

        You must answer the complaint in writing, by you or your attorney, within twenty (20)
days, commencing the day after you receive this summons, or judgment will be entered against you
for what the plaintiff has demanded.

        If you have a claim for relief against the plaintiff arising from the same transaction or
occurrence, you must assert it in your written answer.

Dated:___JUN 2 9 2012_____, 2012              Sherri M. Crews
                                              Clerk, Clinton Superior Court

Service by:  CERTIFIED MAIL

Attorney for Plaintiff:
Steven P. Meyer
Ball-Eggleston, P.C.
201 Main Street, Suite 810
P.O. Box 1535                                 Courthouse
Lafayette, IN  47902                          Courthouse Square
(765) 742-9046                                Frankfort, IN  46041
                                              765-659-6340

STATE OF INDIANA        )        CLINTON COUNTY SUPERIOR COURT
                        )
COUNTY OF CLINTON       )        CAUSE NO: 12D01-1206-CT-

                                 **12D01 1206 CT 000640**

DIANA ANES, PERSONAL REPRESENTATIVE )
OF THE ESTATE OF DENNIS ANES,        )
DECEASED,                            )
        Plaintiff,                   )
                                     )
v.                                   )            **FILED**
                                     )
THE COUNTY OF CLINTON, JEFF WARD,    )          **JUN 2 7 2012**
AS THE SHERRIFF OF CLINTON COUNTY,   )
THE CLINTON COUNTY SHERRIFF'S        )          *Sheri M. Crews*
DEPARTMENT, STEVE CATRON, KREIG KING )      CLERK CLINTON SUPERIOR COURT
and KREIGH SLOGGETT,                 )
        Defendants.                  )

## SUMMONS

The State of Indiana to:    Kreigh Sloggett

Address: c/o Clinton County Sherriff's Department, 301 E. Walnut Street, Frankfort, IN 46041

        You have been sued by the person named Plaintiff, in the court stated above. The nature of
the suit against you is stated in the complaint which is attached to this document. It also states the
demand which the plaintiff has made and wants from you.

        You must answer the complaint in writing, by you or your attorney, within twenty (20)
days, commencing the day after you receive this summons, or judgment will be entered against you
for what the plaintiff has demanded.

        If you have a claim for relief against the plaintiff arising from the same transaction or
occurrence, you must assert it in your written answer.

Dated:    JUN 2 9 2012  , 2012

                                            *Sheri M. Crews*
                                        Clerk, Clinton Superior Court

Service by:  CERTIFIED MAIL

Attorney for Plaintiff:
Steven P. Meyer
Ball-Eggleston, P.C.
201 Main Street, Suite 810
P.O. Box 1535
Lafayette, IN 47902                         Courthouse
(765) 742-9046                              Courthouse Square
                                            Frankfort, IN 46041
                                            765-659-6340

STATE OF INDIANA        )        CLINTON COUNTY SUPERIOR COURT
                        )
COUNTY OF CLINTON       )        CAUSE NO: 12D01-1206-CT-_____

DIANA ANES, PERSONAL REPRESENTATIVE )        **12D01 1206 CT 000640**
OF THE ESTATE OF DENNIS ANES,       )
DECEASED,                           )
        Plaintiff,                  )
                                    )
v.                                  )
                                    )                    **FILED**
THE COUNTY OF CLINTON, JEFF WARD,   )
AS THE SHERRIFF OF CLINTON COUNTY,  )                    **JUN 2 7 2012**
THE CLINTON COUNTY SHERRIFF'S       )
DEPARTMENT, STEVE CATRON, KREIG KING)            _Sheri n. Crews_
and KREIGH SLOGGETT,                )            CLERK CLINTON SUPERIOR COURT
        Defendants.                 )

## SUMMONS

The State of Indiana to:        Steve Catron

Address:  c/o Clinton County Sherriff's Department, 301 E. Walnut Street, Frankfort, IN  46041

    You have been sued by the person named Plaintiff, in the court stated above.  The nature of the suit against you is stated in the complaint which is attached to this document.  It also states the demand which the plaintiff has made and wants from you.

    You must answer the complaint in writing, by you or your attorney, within twenty (20) days, commencing the day after you receive this summons, or judgment will be entered against you for what the plaintiff has demanded.

    If you have a claim for relief against the plaintiff arising from the same transaction or occurrence, you must assert it in your written answer.

Dated:  ___JUN 2 9 2012___, 2012                    _Sheri n. Crews_
                                                    Clerk, Clinton Superior Court

Service by:  CERTIFIED MAIL

Attorney for Plaintiff:
Steven P. Meyer
Ball-Eggleston, P.C.
201 Main Street, Suite 810
P.O. Box 1535                           Courthouse
Lafayette, IN  47902                    Courthouse Square
(765) 742-9046                          Frankfort, IN  46041
                                        765-659-6340

STATE OF INDIANA    )      CLINTON COUNTY SUPERIOR COURT
                        )
COUNTY OF CLINTON )      CAUSE NO:  12D01-1206-CT-_____

**12D01 1206 CT 000640**

| | |
|---|---|
| DIANA ANES, PERSONAL REPRESENTATIVE )<br>OF THE ESTATE OF DENNIS ANES, )<br>DECEASED, )<br> )<br>Plaintiff, )<br> )<br>v. )<br> )<br>THE COUNTY OF CLINTON, JEFF WARD, )<br>AS THE SHERIFF OF CLINTON COUNTY, )<br>THE CLINTON COUNTY SHERIFF'S )<br>DEPARTMENT, STEVE CATRON, KREIG KING )<br>and KREIGH SLOGGETT, )<br> )<br>Defendants. ) | **FILED**<br><br>JUN 2 7 2012<br><br>Sheri M. Crews<br>CLERK CLINTON SUPERIOR COURT |

## COMPLAINT FOR WRONGFUL DEATH & 1983 VIOLATIONS

Comes now the plaintiff, and for her claim for relief against the defendants, states as follows:

1.      The decedent, Dennis Anes, died September 14, 2011.  He is survived by his wife, Diana Anes, and his dependant minor granddaughter and ward, Savana Anes. At all material times, Dennis Anes was a resident of Mulberry, Clinton County, Indiana.

2.      Diana Anes was appointed Administrator of the estate of Dennis Anes for the sole purpose of collecting damages for wrongful death, such estate pending in Clinton County Circuit Court, cause number 12C01-1112-ES-124.  At all relevant times, Diana Anes was a resident of Mulberry, Clinton County, Indiana.

3.      The defendant Clinton County is a political subdivision of the State of Indiana.  Upon information and belief, the Clinton County Sheriff's Department is an

1

agency of Clinton County; the Clinton County Sherriff's Department operates the Clinton County jail, and employs deputy sheriffs, jail commanders and jail officers.

4.      The defendant Jeff Ward is, and was at all material times, the Sherriff of Clinton County, as provided in Indiana Constitution Article 6, Section 2.  Pursuant to IC 36-2-16-5, Jeff Ward is charged with the duties of Sherriff, and able to appoint deputies, who are then under his control.

5.      Upon information and belief, the defendant Steve Catron was at all relevant times a deputy sheriff of the Clinton County Sherriff's Department.

6.      Upon information and belief, the defendant Kreig King was at all relevant times an officer at the Clinton County jail.

7.      Upon information and belief, the defendant Kreigh Sloggett was at all relevant times an officer at the Clinton County jail.

## I. General Claims

8.      Decedent Dennis Anes is a Vietnam War veteran who suffered from, among other things, post traumatic stress disorder, depression, anxiety, and alcoholism.

9.      In the evening of September 13, 2011, decedent Dennis Anes was severely intoxicated and was involved in a motor vehicle accident.  Clinton County Deputy Sherriff Steve Catron responded to this accident and discovered that Dennis Anes had just been released from the Indiana Veteran's Home and that he had been drinking at his son's gravesite.

10.     During the evening of September 13, 2011, Clinton County deputy sheriff Steve Catron arrested Dennis Anes for Operating While Intoxicated with a B.A.C. over

2

.15% with a prior conviction of the same offense and for operating a motor vehicle while his license was suspended for life.

11.     During the investigation and the arrest, Steve Catron observed in Dennis Anes' truck Anes' prescription medications, including psychotropic drugs.   The prescription drug containers had Dennis Anes' name on them, as well as the identification of Anes' treating doctors.

12.     Dennis Anes' son Casey Anes arrived at the scene of the accident shortly after it had occurred.

13.     Casey Anes repeatedly warned Steve Catron that Dennis Anes would attempt to kill himself and that his father needed to be placed in a padded cell and closely watched.   Steve Catron advised Casey Anes not to worry, and assured him that his father would be taken care of.

14.     Clinton County jail officer Kreig King was responsible for Dennis Anes after Dennis was brought to the Clinton County jail and charged.

15.     After Dennis Anes arrived at the Clinton County jail, Kreig King observed, and was informed, that Dennis was highly intoxicated.

16.     While Kreig King was booking Dennis Anes, Dennis self-reported that he suffered from depression and anxiety, as well as other physical conditions.

17.     While Kreig King was booking Dennis Anes, Kreig King found Xanax in Dennis Anes' pocket, and was told that Dennis had a prescription for the Xanax.

18.     While Kreig King was booking Dennis Anes, King told Dennis the amount of his bond.   Dennis Anes became upset when he discovered this amount.

19.     Kreig King knew that Dennis Anes had gotten into an accident after drinking at his son's grave.

20.     Kreig King did not contact qualified and available medical personal to address Dennis Anes' mental and physical condition.

21.     Kreig King did not provide any type of suicide precautions or increased observations of Dennis Anes.

22.     At the relevant times herein, Indiana State regulations and the Clinton County Sheriff's Department's policy required hourly check of inmates, including pre-trial detainees such as Dennis Anes.

23.     Shortly before Dennis Anes' arrest, the Clinton County jail commander knew that despite repeated reminders, the Clinton County jail officers were routinely failing to perform hourly checks on the inmates, and that some inmates were not being checked on for a period of as much as four hours.  Despite this knowledge, no disciplinary action was taken against the offending officers.

24.     Shortly before Dennis Anes' arrest, the Clinton County jail commander reminded the jail officers, that in connection with inmate checks, "[a]n hour and one second is too long and you have then become responsible for any issues with an inmate."

25.     During the early morning of September 14, 2011, just hours after Dennis Anes was booked-in, Kreig King ignored Dennis Anes, leaving him unchecked from at least 03:00 until approximately 04:50.

26.     Kreig King chose to ignore Dennis Anes so King could socialize in Central Control with fellow employee Kriegh Sloggett, and talk about the kind of guns that they each liked.

4

27.   While Krieg King socialized with Kriegh Sloggett, King distracted Sloggett and kept him from observing at the camera which was monitoring Dennis Anes' cell.   Furthermore, while Krieg King socialized with Kreigh Sloggett, King, himself, ignored the available camera of Dennis Anes' cell.

28.   While Kreig King socialized with Kreigh Sloggett, Sloggett knew that no one was personally checking on Dennis Anes and that no one was checking the camera of Dennis Anes' cell.

29.   The videotape of Dennis Anes' cell shows that on September 14, 2012, Dennis Anes was starting to plan a suicide, beginning at least at 03:45.   Dennis Anes can be seen on videotape, preparing for, and committing suicide, from about 03:45 until approximately 04:06.

30.   Officers at the Clinton County jail did not discover Dennis Anes was injured in his cell until about 04:50.   Within an approximate half hour of being found by the jail officers, Dennis Anes was pronounced dead.

WHEREFORE, Diane Anes, individually and as personal representative of the Estate of Dennis Anes, demands judgment against the defendants, jointly and severally, in an amount which will fully and fairly compensate her for each and every element of damage allowed by law, costs of this action, and all other proper relief in the premises.

## II.  Negligence

31.   Plaintiff hereby incorporates paragraphs 1-30 of plaintiff's complaint, as if fully stated herein.

32.     Plaintiff timely served an Indiana Tort Claim Notice on the respective defendants by certified letter dated November 9, 2011.  This tort claim notice concerned plaintiff's negligence claims under Indiana tort law.  Plaintiff's Tort Claim was deemed denied, per IC 34-13-3-11, on February 9, 2012.

33.     The injury and death of Dennis Anes was caused by the negligence and fault of Clinton County, Jeff Ward, in his official capacity, and the Clinton County Sheriff's Department and its employees (in their official capacities) in failing to properly supervise and protect Dennis Anes, given his conditions, symptoms and the specific warning to them that Dennis Anes would attempt to kill himself.

34.     The injury and death of Dennis Anes was caused by the negligence and fault of Clinton County, Jeff Ward, in his official capacity, and the Clinton County Sheriff's Department in failing to take reasonable steps, provide reasonable policies and provide reasonable staff and training, to protect the life, health and safety of Dennis Anes while Dennis Anes was detained by them and under their control.

35.     As a direct and proximate result of the negligence and fault of these defendants, the plaintiff, on her own behalf and on behalf of the Estate, has incurred wrongful death damages, including but not limited to, funeral and burial expenses, lost earnings of the decedent, loss of love and affection, loss of support, loss of parental guidance and the necessary and reasonable attorney fees and costs in administering the estate and prosecuting this action.

WHEREFORE, Diane Anes, individually and as personal representative of the Estate of Dennis Anes, demands judgment against the defendants, jointly and severally,

6

in an amount which will fully and fairly compensate her for each and every element of damage allowed by law, costs of this action, and all other proper relief in the premises.

## III.   Section 1983 Claims

36.   Plaintiff hereby incorporates paragraphs 1-30 of plaintiff's complaint, as if fully stated herein.

37.   Steve Catron, Kreig King and Kreigh Sloggett were each aware of Dennis Anes' strong likelihood of suicide.

38.   Despite knowing about this strong likelihood of suicide, each defendant failed to take the necessary and reasonable precautions to adequately protect Dennis Anes.

39.   Despite knowing about this strong likelihood of suicide, each defendant was deliberately indifferent to Dennis Anes and the needs resulting from Dennis' condition and mental health.

40.   The 8th Amendment to the United State's Constitution protects individuals from cruel and unusual punishments and requires prison officials to take reasonable steps to guarantee the safety of inmates, which includes providing care for mental health and adequate protections against known suicide risks.  These protections extend to pre-trial detainees under the 14th Amendment of the United State's Constitution.

41.   Defendants' deliberate indifference to Dennis Anes' risk of suicide violated his protections under the above Constitutional amendments and proximately caused Dennis' death.

42.    As a result of Dennie Anes' death, the plaintiff, on her own behalf and on behalf of the Estate and dependent granddaughter, has suffered the loss of Dennis Anes' continued love, society, companionship, parental guidance, comfort, affection and fellowship; and suffered the loss of Dennis Anes' support, maintenance, services, gifts, and other valuable gratuities; incurred funeral and burial expenses; and incurred attorney fees and costs.

WHEREFORE, Plaintiff, Diane Anes, Individually and as representative of the Estate of Dennis Anes, prays for judgment against each of the Defendants; plus relief in the form of compensatory and punitive damages, costs, and attorney fees (pursuant to 42 U.S.C. §1988), plus any other relief this Court deems just and equitable.

Respectfully submitted,

Elizabeth B. Searle              #18878-49

Steven P. Meyer                  #10344-79
BALL EGGLESTON PC
201 Main Street, Suite 810
P.O. Box 1535
Lafayette, IN  47902
(765) 742-9046
(765) 742-1966 (fax)
smeyer@ball-law.com

**JURY TRIAL DEMAND**

Plaintiff demand trial by jury on all issues.

Steven P. Meyer                  #10344-79

8

STATE OF INDIANA )       CLINTON COUNTY SUPERIOR COURT
                       )
COUNTY OF CLINTON )      CAUSE NO: 12D01-1206-CT-_____

**12D01 1206 CT 000640**

DIANA ANES, PERSONAL REPRESENTATIVE )
OF THE ESTATE OF DENNIS ANES, )
DECEASED, )
    Plaintiff, )
 )
v. )
 )
THE COUNTY OF CLINTON, JEFF WARD, )
AS THE SHERIFF OF CLINTON COUNTY, )
THE CLINTON COUNTY SHERIFF'S )
DEPARTMENT, STEVE CATRON, KREIG KING )
and KREIGH SLOGGETT, )
    Defendants. )

**FILED**

**JUN 2 7 2012**

Sheri M. Crews
CLERK CLINTON SUPERIOR COURT

## APPEARANCE BY ATTORNEY IN CIVIL CASE

1. Party Classification: Initiating

2. The undersigned attorney now appears for:  Diana Anes, Personal Representative
    of the Estate of Dennis Anes, Deceased

3. Applicable attorney information:

        Steven P. Meyer, #10344-79
        Elizabeth B. Searle, #18878-49
        BALL EGGLESTON PC
        201 Main Street, Suite 810
        PO Box 1535
        Lafayette, IN  47902
        Telephone: (765) 742-9046
        Facsimile:  (765) 742-1966
        Email:  smeyer@ball-law.com, esearle@ball-law.com

4. Case type requested:  Civil Tort

5. Will accept FAX service: Yes ✓       No _____

6. This case involves support issues: Yes       No ✓

7. Are there related cases?   Yes _____   No ✓

Respectfully Submitted,

Elizabeth B. Searle, #18878-49

Steven P. Meyer, #10344-79
BALL EGGLESTON PC
201 Main Street, Suite 810
PO Box 1535
Lafayette, IN  47902
Telephone:  (765) 742-9046
Facsimile:  (765) 742-1966
Email:  smeyer@ball-law.com

STATE OF INDIANA      )      CLINTON COUNTY SUPERIOR COURT
                      )
COUNTY OF CLINTON     )      CAUSE NO:  12D01-1206-ct-640


DIANA ANES, PERSONAL REPRESENTATIVE      )
OF THE ESTATE OF DENNIS ANES, DECEASED,  )
                                         )
                            Plaintiff,   )        **FILED**
                                         )
              v.                         )        JUL 1 2 2012
                                         )
THE COUNTY OF CLINTON, JEFF WARD, as the )        *Sheri M. Crews*
SHERIFF OF CLINTON COUNTY, THE CLINTON   )        CLERK CLINTON SUPERIOR COURT
COUNTY SHERIFF'S DEPARTMENT, STEVE       )
CATRON, KREIG KING and KREIGH SLOGGETT,  )
                                         )
                            Defendants.  )

## APPEARANCE

/ / CHECK IF PRO SE.

1.      NAME OR NAMES OF RESPONDING PARTY OR PARTIES.

        **Clinton County, Jeff Ward, Sheriff of Clinton County, the Clinton County Sheriff's
        Department, Steve Catron, Kreig King and Kreigh Sloggett**

2.      ADDRESS OF PRO SE RESPONDING PARTY OR PARTIES (AS APPLICABLE FOR
        SERVICE OF PROCESS):  N/A


3.      ATTORNEY INFORMATION (AS APPLICABLE FOR SERVICE OF PROCESS):

        Name:       James S. Stephenson          Atty. Number: 11434-98
                    STEPHENSON MOROW & SEMLER
        Address:    3077 East 98th Street Suite 240    Phone:  (317) 844-3830
                    Indianapolis, IN 46280            FAX:  (317) 573-4194
                                Computer Address:  jstephenson@stephlaw.com


4.      WILL RESPONDING PARTY ACCEPT FAX SERVICE.  YES  _x_  NO
        (IF YES, FAX NO. (317) 573-4194)

5.    ADDITIONAL INFORMATION REQUIRED BY STATE OR LOCAL RULE:  N/A

6.    (OPTIONAL) ADDITIONAL INFORMATION TO SUPPLEMENT THE APPEARANCE
       FORM SUBMITTED BY THE INITIATING PARTY:  N/A

Respectfully submitted,

STEPHENSON MOROW & SEMLER

James S. Stephenson - Attorney No: 11434-98
Attorney for Defendants
County of Clinton, Jeff Ward, Sheriff of Clinton
County, the Clinton County Sheriff's Department,
Steve Catron, Kreig King and Kreigh Sloggett

## CERTIFICATE OF SERVICE

I certify that a true and exact copy of the foregoing was served upon all parties of record this

11th day of July, 2012, and deposited same in the U.S. mail, first-class, postage prepaid to:

Steven P. Meyer
Elizabeth B. B. Searle
BALL-EGGLESTON, P.C.
201 Main Street, Suite 810
P. O. Box 1535
Lafayette, IN  47902

James S. Stephenson

STEPHENSON MOROW & SEMLER
3077 East 98th Street, Suite 240
Indianapolis, IN 46280
(317) 844-3830
Fax: (317) 573-4194
jstephenson@stephlaw.com

12-6266.bb

2

STATE OF INDIANA     )    CLINTON COUNTY SUPERIOR COURT
                   )
COUNTY OF CLINTON   )    CAUSE NO:  12D01-1206-ct-640

| | |
|---|---|
| DIANA ANES, PERSONAL REPRESENTATIVE OF THE ESTATE OF DENNIS ANES, DECEASED,    )<br>)<br>)<br>Plaintiff,  )<br>)<br>v.  )<br>)<br>THE COUNTY OF CLINTON, JEFF WARD, as the )<br>SHERIFF OF CLINTON COUNTY, THE CLINTON )<br>COUNTY SHERIFF'S DEPARTMENT, STEVE )<br>CATRON, KREIG KING and KREIGH SLOGGETT, )<br>)<br>Defendants.  ) | **FILED**<br><br>JUL 1 2 2012<br><br>*Sheri M. Crews*<br>CLERK CLINTON SUPERIOR COURT |

## ANSWER, AFFIRMATIVE DEFENSES AND JURY DEMAND

Come now the defendants, County of Clinton, Jeff Ward, Sheriff of Clinton County, the Clinton County Sheriff's Department, Steve Catron, Kreig King and Kreigh Sloggett, defendants, and for their answer and affirmative defenses to the complaint, state as follows:

1.    Defendants admit Anes died on September 14, 2011.  Defendants have no knowledge sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 1 and neither admit nor deny said allegations but demand strict proof thereof.

2.    Defendants have no knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 2 and neither admit nor deny said allegations but demand strict proof thereof.

3.    Defendants admit Clinton County is a political subdivision of the State of Indiana and that the office of the sheriff of Clinton County operates the jail, employs deputies, the jail commander and jail officers.  All remaining allegations contained in paragraph 3 are denied.

4.      Defendants admit Sheriff Ward is and was the Sheriff of Clinton County in September of 2011. Defendants admit the sheriff possesses authority prescribed by Indiana law, and admit all duties imposed by law. Any allegations contained in paragraph 4 to the contrary are denied.

5.      Defendants admit Steve Catron was a sheriff's deputy for the Clinton County Sheriff in September of 2011. Any remaining allegations or characterizations contained in paragraph 5 are denied.

6.      Defendants admit Kreig King was a jail officer employed by the Clinton County Sheriff in September of 2011. Any remaining allegations or characterizations contained in paragraph 6 are denied.

7.      Defendants admit Kreigh Sloggett was employed as a jail officer by the Clinton County Sheriff in September of 2011. Any remaining allegations or characterizations contained in paragraph 7 are denied.

## I.    General Claims

8.      Defendants have no knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 8 and neither admit nor deny said allegations but demand strict proof thereof.

9.      Defendants admit Anes had been driving while intoxicated, was involved in a motor vehicle accident which he caused, and that deputy Catron responded to the accident scene. All remaining allegations contained in paragraph 9 are denied.

10.     Defendants admit the allegations contained in paragraph 10.

11.     Defendants deny the allegations contained in paragraph 11.

12.     Defendants admit Casey Anes arrived at the scene.   Remaining allegations contained in paragraph 12 are denied.

13.     Defendants deny the allegations contained in paragraph 13.

14.     Defendants deny the allegations contained in paragraph 14.

15.     Defendants admit Anes was legally intoxicated but he was coherent and communicative.  The remaining allegations contained in paragraph 15 are denied.

16.     Defendants admit that during the book-in process Anes was asked whether he had other medical problems the jail staff should know about and that he responded that he had a history of coronary heart disease, anxiety, heart congestion and depression.  Any remaining allegations or characterizations contained in paragraph 16 are denied.

17.     Defendants admit that during the book-in process a pat down search of Anes revealed that he had a pill in his pocket, that officer King called CVS to try to find out what the pill was and that CVS advised him that it was Xanax.   The remaining allegations and characterizations contained in paragraph 17 are denied.

18.     Defendants admit officer King told Anes the amount of his bond.  The remaining allegations contained in paragraph 18 are denied.

19.     Defendants admit officer King was informed that Anes had been involved in a motor vehicle accident.  The remaining allegations contained in paragraph 19 are denied.

20.     Defendants deny there was any reason to contact medical personnel and therefore deny the allegations contained in paragraph 20.

21.     Defendants deny the allegations contained in paragraph 21 and deny that grounds existed for placing Anes on a suicide watch.

22.     Defendants move to strike the allegations contained in paragraph 22 as the state jail regulations and provisions of the policy of the Clinton County Sheriff speak for themselves.

23.     Defendants deny the allegations contained in paragraph 23.

24.     Defendants make no answer to the allegations contained in paragraph 24 as the email referred to speaks for itself.

25.     Defendants deny the allegations contained in paragraph 25.

26.     Defendants deny the allegations contained in paragraph 26.

27.     Defendants deny the allegations contained in paragraph 27.

28.     Defendants deny the allegations contained in paragraph 28.

29.     Defendants deny the allegations contained in paragraph 29.

30.     Defendants admit officer King did not discover Anes until about 4:50 a.m.  The remaining allegations contained in paragraph 30 are denied, and/or defendants are without sufficient knowledge to admit or deny the allegations and demand strict proof thereof.

WHEREFORE, the defendants, County of Clinton, Jeff Ward, Sheriff of Clinton County, the Clinton County Sheriff's Department, Steve Catron, Kreig King and Kreigh Sloggett, deny the plaintiffs are entitled to any relief whatsoever as against these defendants.

## II.     Negligence

31.     Defendants adopt and reallege their answers to paragraphs 1 through 30 as their answer to paragraph 31 of this count II as though fully set forth herein.

32.     Defendants deny the allegations contained in paragraph 32.

33.     Defendants deny the allegations contained in paragraph 33.

34.     Defendants deny the allegations contained in paragraph 34.

35.     Defendants deny the allegations contained in paragraph 35.

4

WHEREFORE, the defendants, County of Clinton, Jeff Ward, Sheriff of Clinton County, the Clinton County Sheriff's Department, Steve Catron, Kreig King and Kreigh Sloggett, deny the plaintiffs are entitled to any relief whatsoever as against these defendants.

### III.   Section 1983 Claims

36.      Defendants adopt and reallege their answers to paragraphs 1 through 35 as their answer to paragraph 36 of this count III as though fully set forth herein.

37.      Defendants deny the allegations contained in paragraph 37.

38.      Defendants deny the allegations contained in paragraph 38.

39.      Defendants deny the allegations contained in paragraph 39.

40.      Defendants deny the allegations contained in paragraph 40.

41.      Defendants deny the allegations contained in paragraph 41.

42.      Defendants deny the allegations contained in paragraph 42.

WHEREFORE, the defendants, County of Clinton, Jeff Ward, Sheriff of Clinton County, the Clinton County Sheriff's Department, Steve Catron, Kreig King and Kreigh Sloggett, deny the plaintiffs are entitled to any relief whatsoever as against these defendants.

### AFFIRMATIVE DEFENSES

The defendants, County of Clinton, Jeff Ward, Sheriff of Clinton County, the Clinton County Sheriff's Department, Steve Catron, Kreig King and Kreigh Sloggett, for their affirmative defenses to the complaint, state as follows:

1.      Defendants Ward, Catron, King and Sloggett are entitled to qualified immunity on the section 1983 claims as their conduct did not constitute violation of a constitutional right as identified by clearly established law.

2.      Plaintiff's state law claims are barred by any and all applicable immunities contained within the Indiana Tort Claims Act, Ind. Code § 34-13-3-3.

3.      Plaintiff's state law claims are barred by failure to fulfill the notice requirements of the Indiana Tort Claims Act, Ind. Code §§ 34-13-3-8, 10 and 12.

4.      To the extent permitted by state law, plaintiff's state law claims are barred by the contributory negligence of the decedent and/or by his having incurred the risk of injury and/or death.

5.      Plaintiff's claim in negligence is barred by the contributory negligence of Diana Anes.

6.      Plaintiff has failed to mitigate its damages.

7.      Diana Anes individually is not a proper party-plaintiff on the section 1983 claim or the state wrongful death claim, and her individual claim should be dismissed.

8.      The Clinton County Sheriff's Department is not a proper party-defendant as it is not a separate and distinct governmental entity but instead is an agency of the Clinton County Sheriff.

9.      The County of Clinton is not a proper party-defendant as it is not the final policymaking authority over sheriff's deputies or jail officers, and because there is no *respondeat superior* liability on the part of Clinton County for alleged torts of sheriff's deputies or jail officers.

10.     Defendants Ward, Catron, King and Sloggett should be dismissed from the state law wrongful death claim because they acted within the scope of their employment. Ind. Code § 34-13-3-5(b).

WHEREFORE, the defendants, County of Clinton, Jeff Ward, Sheriff of Clinton County, the Clinton County Sheriff's Department, Steve Catron, Kreig King and Kreigh Sloggett, pray for judgment in their favor, costs and all other proper relief.

Respectfully submitted,

STEPHENSON MOROW & SEMLER

James S. Stephenson - Attorney No: 11434-98
Attorney for Defendants
County of Clinton, Jeff Ward, Sheriff of Clinton
County, the Clinton County Sheriff's Department,
Steve Catron, Kreig King and Kreigh Sloggett

## JURY TRIAL DEMAND

Pursuant to T.R. 38(B), defendants County of Clinton, Jeff Ward, Sheriff of Clinton County, the Clinton County Sheriff's Department, Steve Catron, Kreig King and Kreigh Sloggett, request trial by jury as to all issues and claims raised by the complaint.

Respectfully submitted,

STEPHENSON MOROW & SEMLER

James S. Stephenson - Attorney No: 11434-98
Attorney for Defendants
County of Clinton, Jeff Ward, Sheriff of Clinton
County, the Clinton County Sheriff's Department,
Steve Catron, Kreig King and Kreigh Sloggett

7

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and exact copy of the foregoing was served upon all parties of record this 11th day of July, 2012, and deposited same in the U.S. mail, first-class, postage prepaid to:

> Steven P. Meyer
> Elizabeth B. B. Searle
> BALL-EGGLESTON, P.C.
> 201 Main Street, Suite 810
> P. O. Box 1535
> Lafayette, IN  47902

James S. Stephenson

STEPHENSON MOROW & SEMLER
3077 East 98th Street, Suite 240
Indianapolis, IN 46280
(317) 844-3830
Fax: (317) 573-4194
jstephenson@stephlaw.com

12-6266.bb

STATE OF INDIANA　　　)　　　CLINTON COUNTY SUPERIOR COURT
　　　　　　　　　　　　　　)
COUNTY OF CLINTON　)　　　CAUSE NO:  12D01-1206-CT-640

DIANA ANES, PERSONAL REPRESENTATIVE )
OF THE ESTATE OF DENNIS ANES,　　　　　)
DECEASED,　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
Plaintiff,　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
THE COUNTY OF CLINTON, JEFF WARD,　　)
AS THE SHERRIFF OF CLINTON COUNTY,　)
THE CLINTON COUNTY SHERRIFF'S　　　　)
DEPARTMENT, STEVE CATRON, KREIG KING)
and KREIGH SLOGGETT,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
Defendants.　　　　　　　　　　　　　　)

## PLAINTIFF'S VERIFIED MOTION FOR CHANGE OF VENUE
## FROM CLINTON COUNTY

Comes now the plaintiff, by counsel, and moves for a change of venue from Clinton County, and in support thereof, states as follows:

1.　　This matter concerns the wrongful death of Dennis Anes.　Mr. Anes was a Vietnam war veteran suffering from post-traumatic stress disorder, depression, anxiety and alcoholism.　In September, 2011, Mr. Anes was arrested by the Clinton County Sheriff's department in connection with an automobile accident in which Mr. Anes was involved, where he was heavily intoxicated and after which  he had been drinking at his deceased son's gravesite.

2.　　During the arrest, Mr. Anes' son repeatedly warned Clinton County deputy sheriff Steve Catron that his father would try to hurt himself in jail.　No precautions were taken to protect Mr. Anes.　Rather, even though inmates are to be observed every hour, Clinton County jail officers Kreig King and Kreigh Sloggett left the drunk, depressed and anxious Mr. Anes alone for nearly two (2) hours.　Mr. Anes was left alone because Sloggett and King wanted to

1

socialize, discussing various firearms that they liked.  During this time, Mr. Anes was permitted to commit suicide.  The suicide and death of Dennis Anes occurred within hours of his being arrested and within hours of his son warning the Clinton County deputy sheriff that Mr. Anes would attempt to harm himself while in jail.  Before this time, Clinton County knew its employees were not performing the required safety checks on inmates, knew that the jail was not properly staffed, and failed to provide adequate training and policies.

3.     On June 27, 2012, Plaintiff filed her lawsuit, naming as defendants: (a) Clinton County; (b) the Clinton County Sheriff's Department; (c) Sheriff Jeff Ward; (d) Deputy Sheriff Steve Catron; (e) employee Kreig King; and (d) employee Kreigh Sloggett.  Defendants filed their answer on July 12, 2012.

4.     Per Trial Rule 76(C), this motion is timely made.

5.     It has been reported that after Mr. Anes' death, Clinton County performed an internal investigation into the matter.  The newspaper article attached to the accompanying affidavit reports that Clinton County's Sheriff presented the Clinton County coroner's report and the results of the investigation to the Clinton County Commissioners.

6.     It has been reported that the Indiana State Police also conducted an investigation into the matter.  The undersigned has been advised by the Indiana State Police that it cannot produce its investigation to the undersigned because the Clinton County prosecutor's office has not released the information, despite requests to do such. (See affidavit of the undersigned and the attached e-mail from Detective Buckley, dated April 13, 2012).

7.     The attorney for Clinton County, Ted Johnson, has provided the undersigned with the applicable insurance covering Mr. Anes' wrongful death claim.  (see affidavit of the

undersigned and the attached e-mail from Clinton County Attorney, dated February 21, 2012).
The applicable insurance policy names the Clinton County Commissioners as its insured.

8.      Clinton County is a political subdivision of the State of Indiana.  The Clinton
County Board of Commissioners is the county executive and transacts the business of the
County.  I.C. 36-2-2-2.  Upon information and belief, the Clinton County Sherriff's Department
is an agency of Clinton County; the Clinton County Sherriff's Department operates the Clinton
County jail, and employs deputy sheriffs, jail commanders and jail officers.

9.      The employees of the Clinton County Sheriff's Department are employees of
Clinton County.  I.C. 36-8-10-4(a) ("A county police force is established in each county. The
members are employees of the county, and the sheriff of the county shall assign their duties
according to law.").

10.     Indiana statute mandates a change of venue when the county is a party to the suit
and when the opposing party has undue influence over the citizens of the county, or an odium
attaches to the applicant or to the applicant's cause of action or defense, on account of local
prejudice.  I.C. 34-35-1-1(3)-(4).

11.     Similarly, Trial Rule 76(A) provides that a motion for change of venue "shall" be
granted upon "a showing that the county where suit is pending is a party or that the party seeking
the change will be unlikely to receive a fair trial on account of local prejudice or bias regarding a
party or the claim or defense presented by a party."

12.     In acting on the application for a change, the trial judge acts in a ministerial
capacity and can look only to the affidavit and the complaint.  If the affidavit is sufficient and the
cause proper, the change must be granted.  State ex rel. Roth v. Dickey, 225 Ind. 279, 281, 73
N.E.2d 765, 766 (Ind. 1947) (overruled, in part, on other grounds).

13.    In the present action, Clinton County is a party to the action and various Clinton County elected officials, departments and employees have been involved in the actions causing, and investigation into, the wrongful death of Dennis Anes.

14.    In the present action, Clinton County and its insurance company are financially responsible for damages that are awarded to Mr. Anes' estate.

15.    Based upon the above, and pursuant to I.C. 34-35-1-1 and T.R. 76(A), Plaintiff's change of venue from Clinton County should be granted, and this matter should be transferred to a nearby county.

**WHERFORE**, Plaintiff respectfully requests that this matter be given a change of venue from Clinton County, per the procedures set forth in Trial Rule 76(D), and for all other relief just and proper in the premises.

Respectfully submitted,

Elizabeth B. Searle        #18878-49
BALL EGGLESTON PC
201 Main Street, Suite 810
P.O. Box 1535
Lafayette, IN 47902
(765) 742-9046
(765) 742-1966 (fax)

<u>VERIFICATION</u>

I verify under penalties of perjury that the foregoing representations are true and accurate to the best of my knowledge.

7/20/12
Date

Elizabeth B. Searle, Attorney No. 18878-49

4

## CERTIFICATE OF SERVICE

I certify that on the 20th day of July, 2012 a true and complete copy of the above and foregoing was served by depositing the same in the United States mail with first-class postage affixed thereto upon:

James S. Stephenson
Stephenson Morow & Semler
3077 East 98th Street, Sutie 240
Indianapolis, IN 46280

BALL EGGLESTON PC

BY: _____

5

STATE OF INDIANA    )      CLINTON COUNTY SUPERIOR COURT
                        )
COUNTY OF CLINTON )      CAUSE NO:  12D01-1206-CT-640

DIANA ANES, PERSONAL REPRESENTATIVE )
OF THE ESTATE OF DENNIS ANES,         )
DECEASED,                      )
                        )
Plaintiff,                   )
                        )
v.                       )
                        )
THE COUNTY OF CLINTON, JEFF WARD,   )
AS THE SHERIFF OF CLINTON COUNTY,    )
THE CLINTON COUNTY SHERRIFF'S       )
DEPARTMENT, STEVE CATRON, KREIG KING)
and KREIGH SLOGGETT,           )
                        )
Defendants.               )

## AFFIDAVIT

Comes now Elizabeth Searle, and states as follows:

1. Attached hereto as Exhibit A is a true and accurate copy of a newspaper article that came into my possession.  The article discusses the presentation to the Clinton County Commissioners concerning the investigation into the death of Dennis Anes.

2. Attached hereto as Exhibit B is a true and accurate e-mail chain concerning conversation that I had with Detective Buckley.  The conversations ensued because despite our requests for documents, and repeated reminders to the Indiana State Police, our law firm did not receive the discovery from the Indiana State Police concerning its investigation into the death of Dennis Anes.  To date, the Indiana State Police has still not produced a copy of its investigation.  The undersigned has been informed that The Indiana State Police will not produce its investigation until the Clinton County Prosecutor's office approves of the production.

3. Attached hereto as Exhibit C is a true and accurate copy of an e-mail that I received from the Clinton County Attorney, Ted Johnson. The e-mail was in connection with the undersigned's request for insurance information concerning liability coverage for claims regarding the wrongful death of Dennis Anes and related section 1983 claims. Attached hereto as Exhibit C is also the attachments that were sent as a part of the e-mail. The attachments show that the insurance policy was issued to the Clinton County Commissioners.

I affirm, under penalties for perjury, that the foregoing representations are true to the best of my knowledge and belief.

Dated: 7/20/12

_____
Elizabeth B. Searle

STATE OF INDIANA        )
                        )SS:
COUNTY OF TIPPECANOE)

Before me, a Notary Public in and for said County and State, personally appeared Elizabeth B. Searle and executed the foregoing this 20th day of July, 2012.

_____
Notary Public
Printed Name: Teresa Miller
County of Residence: Tippecanoe

My Commission Expires:
4-26-2017

towns," our lives enough." Mike

See DETAILS / Page A6

plans

# Jail death ruled a suicide

## Coronor determines asphyxiation

**BY SPENCER ROUSH**
sroush@times.com



roush@times.com
uper 7 to put

The death of a man in custody at the Clinton County jail last week has been ruled a suicide.

Clinton County Coroner Ed Cripe determined the death of Dennis Anes was a suicide by asphyxiation. The 62-year-old was pronounced dead early Wednesday morning and an autopsy took place that evening.

Clinton County Sheriff Jeff Ward announced that the investigation was closed and gave the coroner's report at the commissioner's meeting Monday.

Anes had been arrested on a DUI charge less than eight hours before his suicide. Ward said the jail officials ask questions before booking an inmate regarding being suicidal. If Anes had given any inclination that he was suicidal, Ward said different actions would've been taken.

Ward said jail officials discovered Anes unconscious at 4:49 a.m. and he was transported to Frankfort's St. Vincent's Hospital, where he was pronounced dead.

"Once he was found, we started CPR and took him to the hospital," Ward said.

The coroner could not be reached for comment by press time.

hotel. The
r slept in
'er, while
ept inside
about the

e should
fusion as
w owner
take to
habit-

e motel
bectors
y and
with
for
en-
uld
th

EXHIBIT *A*

## Elizabeth Searle

| | |
|---|---|
| **From:** | Buckley, Steve <SBuckley@isp.IN.gov> |
| **Sent:** | Friday, April 13, 2012 9:30 AM |
| **To:** | Elizabeth Searle |
| **Cc:** | Harper, Bryan |
| **Subject:** | RE: Dennis Anes |

Ms. Searle,
I have all my information ready to send and had to pass your request through my chain of command and our legal division to obtain permission to send and disclose information from a criminal investigation. Currently, I am waiting on a letter from the Clinton County Prosecutor's Office stating they do not wish to file criminal charges prior to releasing any information for a civil case. I will send an e-mail when the packet is mailed. Thank you for your patience. If you need any further, please do not hesitate to e-mail or call me (765-567-2125).
Steve Buckley

---

**From:** Elizabeth Searle [mailto:esearle@Ball-Law.com]
**Sent:** Thursday, April 12, 2012 4:05 PM
**To:** Buckley, Steve
**Subject:** Dennis Anes

Detective Buckley,

As you are aware, my office represents the estate of Dennis Anes. We sent a subpoena to the Indiana State Police a few months ago, in connection with the investigation of the in-custody death of Mr. Anes. My office was told that this information would be forth coming. Could you please let me know when we can expect it? Thank you for your assistance. -Beth

Elizabeth Searle
**BALL ◇ EGGLESTON, PC**
P.O. Box 1535
Lafayette, IN 47902
Tel: (765) 742-9046
Fax: (765) 742-1966
http://www.ball-law.com

This e-mail is sent by a law firm and may contain information that is privileged or confidential. If you are not the intended recipient, please delete the e-mail and any attachments and notify us immediately.

EXHIBIT 

**Elizabeth Searle**

| | |
|---|---|
| **From:** | Ted Johnson <tjohnson@rbjlawyers.com> |
| **Sent:** | Tuesday, February 21, 2012 10:22 AM |
| **To:** | Elizabeth Searle |
| **Subject:** | RE: Dennis Anes |
| **Attachments:** | General Liability Policy.pdf; Excess Liability Policy.pdf |

Attached are the policies applicable to your record request.  Ted Johnson

Ted Johnson
Attorney for Clinton County
2 E. Washington St., Ste. 300
P.O. Box 686
Frankfort, IN 46041
Phone:  (765)654-8776
FAX:  (765)654-9247

EXHIBIT _C_

Policy Number: 791-00-03-08-0001

Limits of Insurance

| | |
|---|---|
| General Aggregate | $2,000,000 |
| Products/Completed Operation Aggregate | $2,000,000 |
| Coverage A Bodily Injury and Property Damage | $1,000,000 Each Occurrence |
| Coverage B Personal and Advertising Injury | $1,000,000 |
| Coverage A & B Property Damage Deductible | $0 Each Occurrence or Offense |
| Damage to Premises Rented to You | $1,000,000 Each Occurrence |
| Coverage C Health Care and Social Services Deductible | $1,000,000 Each Wrongful Act $0 Each Wrongful Act |
| Medical Expense | Not Covered |

Forms applicable to the Liability Coverage Part:
See ASC 00 11 01 98, Schedule 6

3 2-72-0010 01/25/2011  MSP CPW PR 1.000

ASC 00 05 01 98

Copyright 1998, OneBeacon Insurance Group
MANUSCRIPTED

LIABILITY DECLARATIONS
Page 1 of 1

POLICY NUMBER: 791-00-03-08-0001

| | |
|---|---|
| 44115 | General purpose government risks organized as counties |

Subline(s): 334 Premises/Operations

| Loc | Bldg | Subline(s) |
|-----|------|------------|
| 1 | 1 | 334 |

| | |
|---|---|
| 48727 | Streets, Roads, Highways or Bridges - existence and maintenance hazard only |

Subline(s): 334 Premises/Operations
336 Products/Completed Operations

| Loc | Bldg | Subline(s) |
|-----|------|------------|
| 1 | 1 | 334, 336 |

Note:  See reverse side for definition of premium basis

Copyright 1998, OneBeacon Insurance Group
MANUSCRIPTED

B.  Insuring Agreement – Liability for Employment Practices Offense

1.  We will pay those sums that the insured becomes legally obligated to pay as "damages" resulting from an "employment practices offense" to which this insurance applies. This insurance DOES NOT apply to any "claim" resulting from an "employment practices offense" which takes place in whole or in part prior to the Retroactive Date shown in the Declarations or subsequent to the termination of this policy.

2.  We will have the right and duty to defend the insured against any "suit" seeking those "damages". For the purposes of this Coverage B, "suit" shall include an Equal Employment Opportunity Commission (EEOC) hearing or proceeding or equivalent state or local agency hearing or proceeding. However, we will have no duty to defend the insured against any "suit" seeking "damages" for an "employment practices offense" to which this insurance does not apply. We may, at our discretion, investigate any "employment practices offense" and settle any "claim" that may result.

    However:

    a.  The amount we will pay for "damages" is limited as described in SECTION V – LIMITS OF INSURANCE; and

    b.  Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments (Section I. D).

3.  This insurance applies to "damages" resulting from an "employment practices offense" only if the "employment practices offense" was committed:

    a.  By an insured in the course and scope of their duties for you;

    b.  On or after the Retroactive Date shown in the Declarations and before the end of the policy period; and

    c.  A "claim" for "damages" is first made in writing against any insured during the policy period or any Extended Reporting Period we provide under SECTION VIII – EXTENDED REPORTING PERIODS

    A "claim" will be deemed to have been made when written notice of such "claim" is received by any insured or by us, whichever comes first. All "claims" resulting from an "employment practices offense" or a series of "related employment practices offenses" will be deemed to have been made when the first of those "claims" is made against any insured.

    Notice to us that:

    •  all or part of any insured's acts or omissions may in the future be discovered to be an "employment practices offense"; and

    •  any insured may in the future receive written notice of an "employment practices offense" or "claim";

    is not notice of an "employment practices offense".

4.  We will consider each "employment practices offense" in a series of "related employment practices offenses" to have been committed on the date of the first "employment practices offense", including any continuation, change or resumption of such "employment practices offense".

    This insurance applies to "damages" arising out of an "employment practices offense" committed anywhere in the world, but only if the insured's liability for "damages" is determined in a "claim" on the merits brought in the United States of America, including its territories and possessions and Puerto Rico; and Canada; or in a settlement agreed to by us.

C.  Insuring Agreement – Liability for Employee Benefit Administration Offenses

1.  We will pay those sums that the insured becomes legally obligated to pay as "damages" resulting from an offense in the "administration" of your "employee benefit plans" to which this insurance applies. This insurance DOES NOT apply to any "claim" resulting from an offense in the "administration" of "employee benefit plans" which takes place in whole or in part prior to the Retroactive Date shown in the Declarations or subsequent to the termination of this policy.

2.  We will have the right and duty to defend the insured against any "suit" seeking those "damages". However, we will have no duty to defend the insured against any "suit" seeking "damages" for an offense in the "administration" of "employee benefit plans" to which this insurance does not apply. We may, at our discretion, investigate any offense in the "administration" of "employee benefit plans" and settle any "claim" that may result.

Includes copyrighted material of Insurance Services Office, Inc.
Copyright 2007, OneBeacon Insurance Group

GRS EO 102 07 07

## Definition of Premium Basis

When used as a premium basis:

"admissions" means the total number of persons, other than employees of the named insured, admitted to the event insured or to events conducted on the premises whether on paid admission tickets, complimentary tickets or passes.

"cost" means total cost of all work let or sublet in connection with each specific project including: the cost of all labor, materials and equipment furnished, used or delivered for use in the execution of the work and all fees, bonuses or commissions made, paid or due.

"area" means the total number of square feet or floor space at the insured premises.

"payroll" means remuneration (all money or substitutes for money) earned during the policy period by proprietors and by all employees of the named insured subject to any overtime earnings or limitation of payroll rule applicable in accordance with the manuals in use by the Company.

"sales" means the gross amount charged by the named insured, concessionaires of the named insured or by other trading under the insured's name for all good or products sold or distributed, for operations performed during the policy period and for rentals subject to the limitation sales rule applicable in accordance with the manuals in use by the Company.

"each" means a unit of exposure whose quantity is indicated in the classification footnotes in the manual used by the Company, such as "per person."

"unit" (primarily applicable to apartment buildings and condominiums) means a single room or group of rooms intended for occupancy as separate living quarters by a family, by a group of unrelated persons living together or by a person living alone.

# SCHEDULE 6

Effective 01/09/2011 , this schedule forms a part of Policy No. 791-00-03-08-0001
(At the time stated in the policy)

issued to

COMMISSIONERS OF CLINTON COUNTY,
INDIANA

Producer: GREGORY & APPEL, INC.

by OneBeacon America Insurance Company

Liability Coverage Part Declarations, ASC 00 05 01 98, Continued:

Forms Applicable to the Liability Coverage Part:

| | |
|---|---|
| ASC 00 05 01 98 | LIABILITY COVERAGE PART DEC |
| CG 21 71 06 08 | EXCL- OTHER ACTS OF TERRORISM; CAP ON CERTIFIED LOSSES |
| GRS GL 101 07 07 | COMMERCIAL GENERAL LIABILITY COVERAGE FORM |
| GRS GL 301 07 07 | ADDL INSURED - DESIGNATED PERSON OR ORGANIZATION |
| GRS GL IN 01 07 07 | IN CHANGES - CANCELLATION AND NONRENEWAL |
| VCG 100 10 98 | LIABILITY SCHEDULE |
| ASC 00 11 01 98 | Schedule 6 - LIABILITY FORMS LIST |

3 2-72-0010 01/25/2011  MSP CPW PR 1.000

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM
## for Government Risks

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under SECTION II – WHO IS AN INSURED

Other words and phrases that appear in quotation marks have special meaning. Refer to SECTION V – DEFINITIONS.

SECTION I – COVERAGES

COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.  Insuring Agreement

    a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any "claim" that may result. But:

        (1) The amount we will pay for damages is limited as described in SECTION III – LIMITS OF INSURANCE; and

        (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A, B or C or medical expenses under Coverage D.

        No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A, B and C.

    b.  This insurance applies to "bodily injury" and "property damage" only if:

        (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        (2) The "bodily injury" or "property damage" occurs during the policy period; and

        (3) Prior to the policy period, no insured listed under Paragraph 1. of SECTION II – WHO IS AN INSURED and no "employee" authorized by you to give or receive notice of an "occurrence" or "claim", knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, in whole or in part, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

    c.  "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred, in whole or in part, by any insured listed under Paragraph 1. of SECTION II – WHO IS AN INSURED or any "employee" authorized by you to give or receive notice of an "occurrence" or "claim", includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

    d.  "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of SECTION II – WHO IS AN INSURED or any "employee" authorized by you to give or receive notice of an "occurrence" or "claim":

        (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

        (2) Receives a written or verbal demand or "claim" for damages because of the "bodily injury" or "property damage"; or

POLICY NUMBER: 791-00-03-08-0001

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED –
# DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART (CLAIMS-MADE)

SECTION II. WHO IS AN INSURED is amended to include as an insured the person or organization shown below, but only with respect to liability arising out of your premises or operations.

[If no entry appears below, the information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.]

Name of person or organization:

ALL LESSORS OF EQUIPMENT LEASED BY THE
COMMISSIONERS OF CLINTON COUNTY

3 2-72-0010 01/25/2011   MSP CPW PR 1.000

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
Copyright 2007, OneBeacon Insurance Group
MANUSCRIPTED

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred, in whole or in part, or has begun to occur, changed, continued or resumed.

2.  Exclusions

This insurance does not apply to:

a.  Expected Or Intended Injury Or Damage

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

b.  Aircraft, Auto Or Watercraft

"Bodily injury" or "property damage" arising directly or indirectly out of, or in any way related to the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the "claim" against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is not being used to carry persons or property for a charge;

(3) A watercraft you own that is not powered by a motor, or powered by a motor or a combination of motors of 100 horsepower or less, or a personal watercraft;

(4) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(5) Liability assumed by you under an "insured contract" for the ownership, maintenance or use of aircraft or watercraft, provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

(6) "Bodily injury" or "property damage" arising out of:

(a) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged or designated as covered autos under your Automobile liability insurance; or

(b) the operation of any of the machinery or equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment".

(7) An aircraft chartered with crew and pilot. This exception does not apply if the aircraft is owned by you or the aircraft is being used to carry any person or property for a charge.

c.  Asbestos, Nuclear

"Bodily injury" or "property damage" arising directly or indirectly out of, or in any way related to:

(1) any asbestos or asbestos-containing materials;

(2) any radioactive matter or nuclear material.

d.  Contractual Liability

"Bodily injury" or "property damage" for which any insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed by you in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

Includes copyrighted material of Insurance Services Office, Inc.
Copyright 2007, OneBeacon Insurance Group

GRS GL 101 07 07

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a "suit" in which damages to which this insurance applies are alleged.

e.  Dam, Reservoir or Levee Structural Failure or Collapse

"Bodily injury" or "property damage" arising directly or indirectly out of, or in any way related to the structural failure, collapse, bursting, flooding, cracking, settling, seepage, underseepage, subsidence, landslide or earth movement of any dam, reservoir or levee.

This exclusion does not apply to "bodily injury" or "property damage" arising out of the structural failure, collapse, bursting, flooding, cracking, settling, subsidence, landslide or earth movement of any dam, reservoir or levee which is scheduled in the policy declarations.

f.  Damage To Impaired Property Or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising directly or indirectly out of, or in any way related to:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

g.  Damage To Property

"Property damage" to:

(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 30 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in SECTION III – LIMITS OF INSURANCE.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (5) of this exclusion does not apply to "property damage" resulting from actions taken to protect persons or property by your fire, ambulance or rescue services.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

h.  Damage To Your Product

"Property damage" to "your product" arising directly or indirectly out of, or in any way related to it or any part of it.

Includes copyrighted material of Insurance Services Office, Inc.
Copyright 2007, OneBeacon Insurance Group

i.   Damage To Your Work

"Property damage" to "your work" arising directly or indirectly out of, or in any way related to it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

j.   Distribution of Material In Violation Of Statutes

"Bodily injury" or "property damage" arising directly or indirectly out of, or in any way related to any action or omission that violates or is alleged to violate:

(1)  The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

(2)  The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

(3)  Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

k.   Electronic Data

"Bodily injury" and "property damage" arising directly or indirectly out of, or in any way related to the loss, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

l.   Eminent Domain or Condemnation

"Bodily injury" or "property damage" arising directly or indirectly out of, or in any way related to any impairment, deprivation or destruction of property, including loss of use or diminution in value thereof, resulting from proceedings in eminent domain or from inverse condemnation, by whatever name called.

m.  Employer's Liability

"Bodily injury" to:

(1)  An "employee" of the insured arising out of and in the course of:

(a)  Employment by the insured; or

(b)  Performing duties related to the conduct of the insured's business; or

(2)  The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

whether the insured may be liable as an employer or in any other capacity; and

to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by you under an "insured contract".

n.   Employment Practices and Employee Benefit Plans

"Bodily injury" or "property damage" arising directly or indirectly out of, or in any way related to your "employment practices" or "administration" of your "employee benefit plans".

o.   Failure to Supply

"Bodily injury" or "property damage" arising directly or indirectly out of, or in any way related to the failure to adequately supply electricity, gas, oil, steam, or water service.

However, we won't apply this exclusion if the failure to supply results from the sudden and accidental injury to tangible property owned or used by any insured to obtain, produce, process or transmit such service.

Nor will we apply this exclusion if there is a Failure to Supply limit greater than zero shown in the Declarations.

Includes copyrighted material of Insurance Services Office, Inc.
Copyright 2007, OneBeacon Insurance Group

p.   Fungi or Bacteria

(1) "Bodily injury" or "property damage" arising directly or indirectly out of, or in any way related to the actual, alleged, or threatened inhalation of, ingestion of, contact with, dispersal, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

(2) "Bodily injury" or "property damage" arising directly or indirectly out of, or in any way related to the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

q.   Health Care and Social Services

"Bodily injury" arising directly or indirectly out of, or in any way related to a "health care and social services wrongful act", or services provided by any medical doctor, wherever provided or any services provided by a nurse at a nursing home, hospice or similar residential facility.

r.   Law Enforcement Activity

"Bodily injury" or "property damage" arising directly or indirectly out of, or in any way related to any "law enforcement activity".

s.   Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

t.   Mobile Equipment

"Bodily injury" or "property damage" arising directly or indirectly out of, or in any way related to:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

u.   Personal And Advertising Injury

"Bodily injury" or "property damage" arising directly or indirectly out of, or in any way related to "personal and advertising injury".

v.   Pollution

(1) "Bodily injury" or "property damage" arising directly or indirectly out of, or in any way related to the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

Includes copyrighted material of Insurance Services Office, Inc.
Copyright 2007, OneBeacon Insurance Group

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

    (i)  Any insured; or

    (ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

    (i)  "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

    (ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

    (iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising directly or indirectly out of, or in any way related to any:

    (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

    (b) Any "claim" by or on behalf of a governmental authority because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such "claim" by or on behalf of a governmental authority.

(3) This exclusion does not apply to "bodily injury" or "property damage" that results from:

    (a) chemicals you use in your sewage treatment, swimming pool maintenance, or water purification operations; or

    (b) natural gas or propane gas you use in your sewage treatment, swimming pool maintenance, or water purification operations; or

    (c) the application of any pesticide or herbicide by or for you if such application or use meets all legal or license requirements of any governmental agency or authority which apply to it.

Also, we won't apply this exclusion to "bodily injury" or "property damage" that results from the application or use of any "pollutants" in the providing of:

    (d) "Potable water" which you supply to others; or

    (e) Urgent response for the protection of property, human life, health or safety conducted away from premises owned by or rented to or regularly occupied by you; or

    (f) "Training operations" by you; or

    (g) Water runoff from the cleaning of equipment used in an "emergency service activity".

Includes copyrighted material of Insurance Services Office, Inc.
Copyright 2007, OneBeacon Insurance Group

(4) This exclusion does not apply to "bodily injury" or "property damage" to a building or its contents if such "bodily injury" or "property damage" is caused by the escape or back-up of sewage or waste water from any sewage treatment facility or fixed conduit or piping that you own, operate, lease, control or for which you have the right of way, but only if "bodily injury" or "property damage" occurs away from land you own or lease; and does not result from any corrosive or radioactive "pollutants" in the sewage or waste water.

Paragraphs (3) and (4) of this exclusion only apply if the discharge is accidental, unintended and stopped as soon as possible. The entirety of any discharge or series of related discharges will be deemed a single discharge regardless of the length of time over which the "pollutants" are released. The entirety of any discharge or series of related discharges will be deemed to have occurred at the date the earliest discharge commenced.

Discharge as used in this exclusion includes dispersal, seepage, migration, release or escape.

w. Recall Of Products, Work Or Impaired Property

"Bodily injury" or "property damage" arising directly or indirectly out of, or in any way related to loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

x. Sexual Harassment

"Bodily injury" arising directly or indirectly out of, or in any way related to "sexual harassment" of any person.

y. Sexual Abuse

"Bodily injury" arising directly or indirectly out of, or in any way related to "sexual abuse" of any person; or the negligent:

(a) employment;

(b) investigation;

(c) supervision;

(d) reporting to the proper authorities, or failing to so report; or

(e) retention;

of any person who actually or allegedly committed or attempted to commit "sexual abuse" for whom any insured is or ever was legally responsible.

However, we won't apply this exclusion to the named insured, if there is a Sexual Abuse limit greater than zero shown in the Declarations.

z. Volunteer Firefighters

"Bodily injury" or "property damage" to any volunteer firefighter, emergency medical services, first aid, or rescue squad volunteer, that results from his or her duties as a volunteer for you or anyone else.

aa. War

"Bodily injury" or "property damage", however caused, arising directly or indirectly out of, or in any way related to:

(a) War, including undeclared or civil war;

(b) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(c) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

Includes copyrighted material of Insurance Services Office, Inc.
Copyright 2007, OneBeacon Insurance Group

bb. Workers' Compensation And Similar Laws

Any obligation of any insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

Exclusions b., f., g., h., i., m., r., s., t., w., aa., and bb. do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in SECTION III – LIMITS OF INSURANCE

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

1. Insuring Agreement

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any "claim" that may result. But:

      (1) The amount we will pay for damages is limited as described in SECTION III – LIMITS OF INSURANCE; and

      (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A, B, C or medical expenses under Coverage D.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A, B and C.

   b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

2. Exclusions

   This insurance does not apply to:

   a. Knowing Violation Of Rights Of Another

      "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

      This exclusion does not apply to "personal and advertising injury" caused by malicious prosecution.

   b. Breach Of Contract

      "Personal and advertising injury" arising directly or indirectly out of, or in any way related to breach of contract, except an implied contract to use another's advertising idea in your "advertisement", or any "claim" against any insured arising directly or indirectly out of, or in any way related to tortious interference with a contract or business relations.

   c. Contractual Liability

      "Personal and advertising injury" for which any insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

   d. Criminal Acts

      "Personal and advertising injury" arising directly or indirectly out of or in any way related to a criminal act committed by or at the direction of the insured.

   e. Distribution of Material In Violation Of Statutes

      "Personal and advertising injury" arising directly or indirectly out of, or in any way related to any action or omission that violates or is alleged to violate;

      (1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

      (2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

      (3) Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

Includes copyrighted material of Insurance Services Office, Inc.
Copyright 2007, OneBeacon Insurance Group
GRS GL 101 07 07

f. Electronic Chatrooms, Bulletin Boards Or Web Logs

"Personal and advertising injury" arising directly or indirectly out of, or in any way related to electronic chatrooms, bulletin boards or web logs any insured hosts, owns, or over which any insured exercises control.

g. Eminent Domain or Condemnation

"Personal and advertising injury" arising directly or indirectly out of, or in any way related to any impairment, deprivation or destruction of property, including loss of use or diminution in value thereof, resulting from proceedings in eminent domain or from inverse condemnation, by whatever name called.

h. Employment Practices

"Personal and advertising injury" arising directly or indirectly out of, or in any way related to your "employment practices" or "administration" of your "employee benefit plan".

i. Health Care and Social Services

"Personal and advertising injury" arising directly or indirectly out of, or in any way related to a "health care and social services wrongful act", or services provided by any medical doctor, wherever provided or any services provided by a nurse at a nursing home, hospice or similar residential facility.

j. Infringement Of Copyright, Patent, Trademark Or Trade Secret

"Personal and advertising injury" arising directly or indirectly out of, or in any way related to the infringement of copyright, patent, trademark, trade dress, trade name, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

k. Insureds In Media And Internet Type Businesses

"Personal and advertising injury" committed by an insured whose business is:

(1) Advertising, broadcasting, publishing or telecasting;

(2) Designing or determining content of web-sites for others; or

(3) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs 23.a., b. and c. of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

l. Law Enforcement Activity

"Personal and advertising injury" arising directly or indirectly out of, or in any way related to any "law enforcement activity".

m. Material Published Prior To Policy Period

"Personal and advertising injury" arising directly or indirectly out of, or in any way related to "publication" of material whose first "publication" took place before the beginning of the policy period.

n. Material Published With Knowledge Of Falsity

"Personal and advertising injury" arising directly or indirectly out of, or in any way related to "publication" of material, if done by or at the direction of the insured with knowledge of its falsity.

o. Pollution

"Personal and advertising injury" arising directly or indirectly out of, or in any way related to the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

p. Pollution-Related

"Personal and advertising injury" arising directly or indirectly out of, or in any way related to any:

(1) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Any "claim" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

q.  Quality Or Performance Of Goods – Failure To Conform To Statements

"Personal and advertising injury" arising directly or indirectly out of, or in any way related to the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

r.  Sexual Harassment

"Personal and advertising injury" arising directly or indirectly out of, or in any way related to "sexual harassment" or "sexual abuse".

s.  Unauthorized Use Of Another's Name Or Product

"Personal and advertising injury" arising directly or indirectly out of, or in any way related to the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to attract or mislead another's potential customers.

t.  Volunteers

"Personal and advertising injury" to any volunteer firefighter, emergency medical services, first aid, or rescue squad volunteer, that results from his or her duties as a volunteer for you or anyone else.

u.  War

"Personal and advertising injury", however caused, arising directly or indirectly out of, or in any way related to:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

v.  Wrong Description Of Prices

"Personal and advertising injury" arising directly or indirectly out of, or in any way related to the wrong description of the price of goods, products or services stated in your "advertisement".

## COVERAGE C HEALTH CARE AND SOCIAL SERVICES LIABILITY

1.  Insuring Agreement

a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of injury arising out of a "health care and social services wrongful act" if a limit is indicated for Coverage C. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for a "healthcare and social services wrongful act" to which this insurance does not apply. We may at our discretion investigate any "health care and social services wrongful act" and settle any "claim" that may result. But:

(1) the amount we will pay for damages is limited as described in SECTION III. LIMITS OF INSURANCE; and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided under SUPPLEMENTARY PAYMENTS – COVERAGES A, B, or C or medical expenses under COVERAGE D.

b.  This insurance applies only if:

(1) The damages are caused by a "health care and social services wrongful act" arising out of your operations; and

(2) The "health care and social services wrongful act" takes place in the "coverage territory" during the policy period.

Includes copyrighted material of Insurance Services Office, Inc.
Copyright 2007, OneBeacon Insurance Group

GRS GL 101 07 07

2. Exclusions Applicable to Coverage C

All exclusions under COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY apply to this COVERAGE C, except that exclusion q. Health Care and Social Services under COVERAGE A will not apply.

All exclusions under COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY apply to this COVERAGE C, except that exclusion l. Health Care and Social Services under COVERAGE B will not apply.

Jail Nurses

Exclusion r. Law Enforcement Activity under COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY and exclusion l. Law Enforcement Activity under COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY will not apply to jail nurses

In addition, this insurance does not apply to:

a. Medical Doctors And Nursing Homes

Services provided by any medical doctor, wherever provided or any services provided by a nurse at a nursing home, hospice or similar residential facility

b. Criminal Acts

Damages, loss or expense arising directly or indirectly out of, or in any way related to any fraudulent, dishonest, criminal or malicious act of the insured or the willful violation of any statute, ordinance or regulation committed by or with the knowledge of the insured. However, we will defend the insured for a "suit" subject to the other terms of this coverage part until either a judgment or final adjudication establishes such an act, or the insured confirms such act.

## COVERAGE D MEDICAL PAYMENTS

1. Insuring Agreement

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(a) The accident takes place in the "coverage territory" and during the policy period;

(b) The expenses are incurred and reported to us within one year of the date of the accident; and

(c) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

2. Exclusions

We will not pay expenses for "bodily injury":

a. Any Insured

To any insured, except "volunteer workers".

b. Correctional And Similar Facilities

To a person injured while being detained, held, or imprisoned in any correctional facility, jail, penal institution, penitentiary, prison, or similar facility.

c. Day Camps Or Overnight Camps

To a person injured while attending or taking part in any day or overnight camp which you operate or sponsor.

d. Day Care Centers

To a person injured while attending or being cared for in any adult or child day care center.

e.  **Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

f.  **Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

g.  **Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

h.  **Recreation Programs And Athletics Activities**

To a person injured while practicing, instructing or participating in any recreation program, physical exercises or games, sports, or athletic contests.

i.  **Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

j.  **Coverage A Exclusions**

Excluded under Coverage A.

## YOUR DEDUCTIBLE – COVERAGES A, B, AND C

Our obligation to pay damages on your behalf applies only to the amount of damages in excess of any Deductible Amount shown in the policy declarations for Coverage A Property Damage Each Occurrence, Coverage A and Coverage B Each Occurrence or Each Offense, or Coverage C Each Wrongful Act. SUPPLEMENTARY PAYMENTS – COVERAGES A, B AND C will not be reduced by the application of the deductible amount.

1.  Limits of Insurance applicable to each occurrence, offense or wrongful act will not be reduced by the Deductible amount. Aggregate limits applicable to Coverage A or Coverage B or Coverage C will not be reduced by the application of the Deductible Amount.

2.  The Deductible amount applies only to damages for each occurrence, offense or wrongful act regardless of the number of insureds, persons, or organizations making "claims" or "claims" made because of such occurrence, offense or wrongful act.

3.  The terms of this insurance, including those with respect to:

    a.  Our right and duty to defend any "suits" seeking those damages; and

    b.  Your duties in the event of an occurrence, offense, wrongful act or "claim"

    apply irrespective of the application of the Deductible Amount.

4.  We may pay any part or all of the Deductible Amount to effect settlement of any "claim" and, upon notification of the action taken; you shall promptly reimburse us for such part of the Deductible amount paid by us.

## SUPPLEMENTARY PAYMENTS – COVERAGES A, B AND C

1.  We will pay, with respect to any "claim" we investigate or settle, or any "suit" against an insured we defend,

    a.  All expenses we incur.

    b.  Up to $2,500 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds, nor will we be a principal under these bonds.

    c.  The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds, nor will we be a principal under these bonds.

    d.  All reasonable expenses incurred by the insured at our request to assist us in the investigation of a "claim" or defense of a "suit", including actual loss of earnings up to $1,000 a day because of time off from work.

    e.  All court costs taxed against the insured in the "suit", but only for that portion of the judgment we are obligated to pay. However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured. Instead, those costs, if awarded or paid in a settlement for a covered "claim", will be subject to SECTION III – LIMITS OF INSURANCE.

Includes copyrighted material of Insurance Services Office, Inc.
Copyright 2007, OneBeacon Insurance Group

f.  Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g.  All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

h.  The costs of any required appeal bond, but only for bond amounts for that portion of the judgment that is for damages that we are obligated to pay and which are within the applicable limit of insurance. We will pay or reimburse you for the cost of higher appeal bond amounts if we are required to do so. We do not have to furnish these bonds, nor will we be a principal under these bonds.

These payments will not reduce the limits of insurance. However, our duty to make such payments ends when we have used up the limit of coverage that applies with the payment of judgments or settlements.

2.  If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a.  The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b.  This insurance applies to such liability assumed by the insured;

c.  The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d.  The allegations in the "suit" and the information we know about the "occurrence", offense, or "health care and social services wrongful act" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e.  The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f.  The indemnitee:

(1)  Agrees in writing to:

(a)  Cooperate with us in the investigation, settlement or defense of the "suit";

(b)  Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c)  Notify any other insurer whose coverage is available to the indemnitee; and

(d)  Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2)  Provides us with written authorization to:

(a)  Obtain records and other information related to the "suit"; and

(b)  Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2.d.(2) of Section I – Coverage A – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

a.  we have used up the applicable limit of insurance in the payment of judgments or settlements; or

b.  the conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

Includes copyrighted material of Insurance Services Office, Inc.
Copyright 2007, OneBeacon Insurance Group

**SECTION II – WHO IS AN INSURED**

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

   e. If you are designated in the Declarations as a governmental unit, you are an insured. Your operating authorities, boards, commissions, districts or any other governmental units are an insured, provided that you operate, control, and fund the authority, board, commission, district or any other governmental unit and to which no other similar insurance is available, but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.

   f. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

   a. Your current or previously elected or appointed officials of the named insured while performing duties related to the conduct of your business.

   b. Your current or previously elected or appointed officials of your operating authorities, boards, commissions, districts or any other governmental units, but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.

   c. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

      (1) "Bodily injury" or "personal and advertising injury":

         (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

         (b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

         (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; or

         (d) Arising out of his or her providing or failing to provide professional health care services unless that person is not a medical doctor or nurse; and is acting as a good Samaritan in response to an accident or public emergency. This subparagraph does not apply to COVERAGE C HEALTH CARE AND SOCIAL SERVICES LIABILITY.

      (2) "Property damage" to property:

         (a) Owned, occupied or used by,

         (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

      you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

   d. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

Includes copyrighted material of Insurance Services Office, Inc.
Copyright 2007, OneBeacon Insurance Group

GRS GL 101 07 07

    e.  Any person or organization having proper temporary custody of your property if you die, but only:

       (1)  With respect to liability arising out of the maintenance or use of that property; and

       (2)  Until your legal representative has been appointed.

Upon death of an insured, their legal representative, but only with respect to duties as such. That representative will have all the rights and duties of such insured under this Coverage Part.

3.  If you are an organization other than a partnership or joint venture, any organization you newly acquire or form over which you exercise controlling interest and actively manage and to which no other similar insurance is available will be deemed to be a named insured.

    a.  Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization;

    b.  Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization; and

    c.  Coverage C does not apply to injury arising out of a "health care and social services wrongful act" committed before you acquired or formed the organization.

4.  Any person or organization with whom you agreed, because of a written contract or written agreement to provide insurance is an insured.

    a.  The above applies only with respect to "your work", "your product" or premises owned or used by you.

    b.  The above does not apply unless the written contract or written agreement has been executed prior to the "bodily injury", "property damage", or "personal and advertising injury".

    c.  The Limits of Insurance applicable to the additional insured are those specified in the written contract or written agreement in the Declarations for this policy, whichever are less. The Limits of Insurance are inclusive of and not in addition to the Limits of Insurance shown in the Declarations.

However, no such person or organization under contract is an insured for "bodily injury", "property damage", or "personal and advertising injury" that results from its sole negligence.

## SECTION III – LIMITS OF INSURANCE

1.  The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

    a.  Insureds;

    b.  "Claims" made; or

    c.  Persons or organizations making "claims".

2.  The General Aggregate Limit is the most we will pay for the sum of all:

    a.  Medical expenses under Coverage D;

    b.  Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

    c.  Damages under Coverage B; and

    d.  Damages under Coverage C.

3.  The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for the sum of all damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4.  Subject to Paragraph 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5.  Subject to Paragraph 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of all:

    a.  Damages under Coverage A;

    b.  Damages under Failure to Supply Coverage;

    c.  Damages under Sexual Abuse Coverage; and

    d.  Medical expenses under Coverage D

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

Includes copyrighted material of Insurance Services Office, Inc.
Copyright 2007, OneBeacon Insurance Group

6. Subject to Paragraph 2. above, the Each Wrongful Act Limit is the most we will pay for damages under Coverage C.

7. Subject to Paragraph 5. above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

8. Subject to Paragraph 5. above, the Medical Expense Limit is the most we will pay under Coverage D for all medical expenses because of "bodily injury" sustained by any one person.

9. If one "occurrence", offense or "health care and social services wrongful act" causes "bodily injury", "property damage", "personal and advertising injury" or injury during this policy period, which is otherwise covered, and during the policy period of one or more prior and/or future policies that include a general liability coverage part for the insured issued by us or any affiliated insurance company, which is otherwise covered, the amount we will pay is limited as follows: This policy's Each Occurrence Limit, or Each Offense Limit or Each Health Care and Social Services Limit will be reduced by the amount of each payment made by us and any affiliated insurance company under the other policies because of such "occurrence", offense or "health care and social services wrongful act".

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – GENERAL LIABILITY CONDITIONS

1. Bankruptcy

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. Duties In The Event Of Occurrence, Offense, Wrongful Act, Claim Or Suit

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense, or wrongful act which may result in a "claim". To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense or wrongful act took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense or wrongful act.

   b. If a "claim" is made against any insured, you must:

      (1) Immediately record the specifics of the "claim" and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the "claim" as soon as practicable.

   c. You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim";

      (2) Authorize us to obtain records and other information;

      (3) Cooperate with us in the investigation or settlement of the "claim" or defense against the "suit"; and

      (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

   d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. Legal Action Against Us

   No person or organization has a right under this Coverage Part:

   a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

   b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

Includes copyrighted material of Insurance Services Office, Inc.
Copyright 2007, OneBeacon Insurance Group

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

4.   **Other Insurance**

If other valid and collectible insurance is available to any insured for a loss we cover under Coverages A, B or C of this Coverage Part, our obligations are limited as follows:

Other Insurance means insurance, or the funding of losses, that is provided by or through:

- Another insurance company;
- Any of our affiliated insurance companies;
- Any risk retention group;
- Any self-insurance, group self-insurance, or similar risk transfer approach, other than any funded by you and to which this coverage part applies.

However, other insurance does not mean umbrella or excess insurance issued to you to apply in excess of the limits of this coverage part.

a.   **Primary Insurance**

This insurance is primary except when Paragraph b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph c. below.

b.   **Excess Insurance**

(1)  This insurance is excess over:

(a)  Any of the other insurance, whether primary, excess, contingent or on any other basis:

(i)   That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(ii)  That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(iii) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(iv)  If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion b. of Section I – Coverage A – Bodily Injury And Property Damage Liability.

(b)  Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

(2)  When this insurance is excess, we will have no duty under Coverages A, B or C to defend any insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

(3)  When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(a)  The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(b)  The total of all deductible and self-insured amounts under all that other insurance.

(4)  We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

c.   **Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

Includes copyrighted material of Insurance Services Office, Inc.
Copyright 2007, OneBeacon Insurance Group

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

d.  Risk Transfer

Whenever you enter into an agreement with another party requiring the other party to provide liability insurance to you, this Coverage Part will be excess over any other valid and collectible insurance that has been provided to you, except insurance specifically arranged to be excess of this Coverage Part.

When this insurance is excess, we will have no duty under Coverages A, B or C to defend any insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

5.  Premium Audit

a.  We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b.  Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c.  The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

d.  We may waive this condition at our option.

6.  Representations

By accepting this policy, you agree:

a.  The statements in the Declarations are accurate and complete;

b.  Those statements are based upon representations you made to us; and

c.  We have issued this policy in reliance upon your representations.

The unintentional error or omission in any information provided by you will not be deemed to be a misrepresentation. However, this provision does not affect our right to collect additional premium or to exercise our rights of cancellation or non-renewal.

7.  Separation Of Insureds

Except with respect to all exclusions contained within Section I – Coverages, Section - III Limits of Insurance, Paragraphs b.(3) and d.(1-3) of Coverage A, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a.  As if each Named Insured were the only Named Insured; and

b.  Separately to each insured against whom "claim" is made.

8.  Transfer Of Rights Of Recovery Against Others To Us

If any insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

9.  When We Do Not Renew

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V – DEFINITIONS

1.  "Administration" means any of the following acts that you do or authorize a person to do:

a.  Counseling "employees" or "volunteer workers", other than giving legal advise, on "employee benefit plans";

b.  Interpreting your "employee benefit plans";

c.  Handling records for your "employee benefit plans"; and

d.  Effecting enrollment, termination or cancellation of "employees" or "volunteer workers" under your "employee benefit plans".

Includes copyrighted material of Insurance Services Office, Inc.
Copyright 2007, OneBeacon Insurance Group

2.  "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

    a.  Notices that are published include material placed on the Internet or on similar electronic means of communication; and

    b.  Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

3.  "Auto" means:

    a.  A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

    b.  Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

    However, "auto" does not include "mobile equipment".

4.  "Bodily injury" means physical harm, sickness or disease sustained by a person, including death resulting from any of these at any time. "Bodily injury" also includes mental anguish, emotional distress, or illness if the mental anguish emotional distress or illness results from such physical harm, sickness or disease at any time. "Bodily injury" also includes loss of care or services resulting from such physical harm, sickness or disease at any time.

5.  "Claim(s)" means an oral or written demand, including a "suit", for payment of money damages.

6.  "Coverage territory" means:

    a.  The United States of America (including its territories and possessions), Puerto Rico and Canada;

    b.  International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph a. above; or

    c.  All other parts of the world if the injury or damage arises out of:

        (1)  Goods or products made or sold by you in the territory described in Paragraph a. above;

        (2)  The activities of a person whose home is in the territory described in Paragraph a. above, but is away for a short time on your business; or

        (3)  "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

    provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph a. above or in a settlement we agree to.

7.  "Emergency Service Activity" means:

    a.  all operations conducted by your firefighting, emergency medical services, or rescue squad units; and

    b.  which are sanctioned by you.

8.  "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

9.  "Employee benefit plan" means group life insurance, group accident or health insurance, profit sharing plans, pension plans, employee stock subscription plans, employee travel, vacation, or savings plans, workers compensation, unemployment insurance, social security and disability benefits insurance, and any other similar benefit program applying to employees or volunteers.

10. "Employment practices" means an actual or alleged improper employment related practice, policy, act, omission or supervision involving an actual, prospective, or former "volunteer worker" or "employee".

11. "Executive officers" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

12. "Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or by-products produced or released by "fungi".

13. "Health care and social services wrongful act" means an error, omission or negligent act:

    a.  in the performance of or failure to perform health care services by an "employee" or "volunteer worker" who is a first responder, nurse, jail nurse, emergency medical technician, or paramedic while acting within the scope of his or her duties for you;

    b.  in the performance of or failure to perform social services including counseling, advice and instruction, by any licensed, certified, or trained "employee" or "volunteer worker" of your social services department, health and human services, health clinic or similar operation;

   c. in the handling of patients by an "employee" or "volunteer worker" who is a first responder, nurse, jail nurse, emergency medical technician or paramedic:

     (1) from the place where they are accepted for movement into or onto the means of transport,

     (2) during transport, and

     (3) from the means of transport to the place where they are finally delivered; and

   d. relating to the dispatching of, including the failure or refusal to dispatch, personnel to provide any of the above services.

14. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

15. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

    if such property can be restored to use by:

     a. the repair, replacement, adjustment or removal of "your product" or "your work"; or

     b. your fulfilling the terms of the contract or agreement.

16. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement;;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

    Paragraph f. does not include that part of any contract or agreement:

     (1) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

      (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

      (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

     (2) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in Paragraph (1) above and supervisory, inspection, architectural or engineering activities.

17. "Law enforcement activity(ies)" means:

   a. any official activity conducted in the course of your law enforcement operations;

   b. any officially sanctioned off-duty activity conducted in the course of law enforcement operations;

   c. ownership, maintenance, operation or use of any premises by your law enforcement operations;

   d. any criminal prosecution activity by judicial officers, prosecution attorneys, and staff other than public defenders or criminal defense attorneys.

18. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

19. "Loading or unloading" means the handling of property:

    a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

    b. While it is in or on an aircraft, watercraft or "auto"; or

    c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

    but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

20. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

    a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    b. Vehicles maintained for use solely on or next to premises you own or rent;

    c. Vehicles that travel on crawler treads;

    d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

        (1) Power cranes, shovels, loaders, diggers or drills; or

        (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

    e. Vehicles not described in Paragraph a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

        (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

        (2) Cherry pickers and similar devices used to raise or lower workers;

    f. Vehicles not described in Paragraph a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

    However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

        (1) Equipment designed primarily for:

            (a) Snow removal;

            (b) Road maintenance, but not construction or resurfacing; or

            (c) Street cleaning;

        (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

        (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged or designated as covered autos under your automobile liability insurance. Instead, those land vehicles are considered "autos".

21. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

22. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    a. False arrest, detention or imprisonment;

    b. Malicious prosecution;

    c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    d. "Publication" of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    e. "Publication" of material that violates a person's right of privacy;

    f. The use of another's advertising idea in your "advertisement"; or

    g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

Includes copyrighted material of Insurance Services Office, Inc.
Copyright 2007, OneBeacon Insurance Group

23. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

24. "Potable water" means water intended and provided for human consumption.

25. "Products-completed operations hazard":

    a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

       (1) Products that are still in your physical possession; or

       (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

          (a) When all of the work called for in your contract has been completed.

          (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

          (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

              Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

    b. Does not include "bodily injury" or "property damage" arising out of:

       (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

       (2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

       (3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

26. "Property damage" means:

    a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

27. "Publication" means any method of announcing or disseminating any material to any third party.

28. "Sexual Abuse" means any actual, attempted or alleged sexual conduct by a person, or by persons acting in concert, which causes injury. "Sexual abuse" includes sexual molestation, sexual assault, sexual exploitation or sexual injury, but does not include "sexual harassment".

29. "Sexual harassment" means any actual, attempted, or alleged unwelcome sexual advances, requests for sexual favors, or other conduct of a sexual nature by a person, or persons acting in concert, which causes injury. "Sexual harassment" includes:

    a. The above conduct when submission to or rejection of such conduct is made either explicitly or implicitly a condition of a person's employment, or a basis for employment decisions affecting a person; or

    b. The above conduct when such conduct has the purpose or effect of unreasonably interfering with a person's work performance or creating an intimidating, hostile or offensive work environment.

30. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

    a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

    b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

31. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

32. "Training Operations" means activities used to prepare, train, or instruct members of a fire department, emergency medical services unit, or rescue squad in accepted and recognized emergency procedures, including municipal, state and federal standards.

33. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

34. "Your product":

    a. Means:

        (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

            (a) You;

            (b) Others trading under your name; or

            (c) A person or organization whose business or assets you have acquired; and

        (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

    b. Includes:

        (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

        (2) The providing of or failure to provide warnings or instructions.

    c. Does not include vending machines or other property rented to or located for the use of others but not sold.

35. "Your work":

    a. Means:

        (1) Work or operations performed by you or on your behalf; and

        (2) Materials, parts or equipment furnished in connection with such work or operations.

    b. Includes:

        (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

        (2) The providing of or failure to provide warnings or instructions.

Includes copyrighted material of Insurance Services Office, Inc.
Copyright 2007, OneBeacon Insurance Group

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION OF OTHER ACTS OF TERRORISM COMMITTED OUTSIDE THE UNITED STATES; CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

A. The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of an "other act of terrorism" that is committed outside of the United States (including its territories and possessions and Puerto Rico), but within the "coverage territory". However, this exclusion applies only when one or more of the following are attributed to such act:

1. The total of insured damage to all types of property exceeds $25,000,000 (valued in U.S. dollars). In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the terrorism and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

2. Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

   a. Physical injury that involves a substantial risk of death; or

   b. Protracted and obvious physical disfigurement; or

   c. Protracted loss of or impairment of the function of a bodily member or organ; or

3. The terrorism involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

4. The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

5. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

With respect to this exclusion, Paragraphs 1. and 2. describe the thresholds used to measure the magnitude of an incident of an "other act of terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether this exclusion will apply to that incident.

B. The following definitions are added:

1. For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

2. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

   a. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act;

Copyright 2008, OneBeacon Insurance Group
MANUSCRIPTED

b. The act resulted in damage:

  (1) Within the United States (including its territories and possessions and Puerto Rico); or

  (2) Outside of the United States in the case of:

    (a) An air carrier (as defined in Section 40102 of title 49, United States Code) or United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), regardless of where the loss occurs; or

    (b) The premises of any United States mission; and

c. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

3. "Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not a "certified act of terrorism".

Multiple incidents of an "other act of terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

C. In the event of an "other act of terrorism" that is not subject to this exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Part.

D. If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

Copyright 2008, OneBeacon Insurance Group

CG 21 71 06 08

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property threat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "Special nuclear material" or "by-product material".

© ISO Properties, Inc., 2001
MANUSCRIPTED

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

© ISO Properties, Inc., 2001
IL 00 21 07 02

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# INDIANA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART (CLAIMS-MADE)

The following is added to SECTION IV – GENERAL LIABILITY CONDITIONS

Cancellation Of Policies In Effect

    a.  90 Days Or Less

        If this policy has been in effect for 90 days or less, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

        (1)  10 days before the effective date of cancellation if we cancel for nonpayment of premium;

        (2)  20 days before the effective date of cancellation if you have perpetrated a fraud or material misrepresentation on us; or

        (3)  30 days before the effective date of cancellation if we cancel for any other reason.

    b.  More Than 90 Days

        If this policy has been in effect for more than 90 days, or is a renewal of a policy we issued, we may cancel this policy, only for one or more of the reasons listed below, by mailing or delivering to the first Named Insured written notice of cancellation at least:

        (1)  10 days before the effective date of cancellation if we cancel for nonpayment of premium;

        (2)  20 days before the effective date of cancellation if you have perpetrated a fraud or material misrepresentation on us; or

        (3)  45 days before the effective date of cancellation if:

            (a)  There has been a substantial change in the scale of risk covered by this policy;

            (b)  Reinsurance of the risk associated with this policy has been cancelled; or

            (c)  You have failed to comply with reasonable safety recommendations.

NONRENEWAL

1.  If we elect not to renew this policy, we will mail or deliver to the first Named Insured written notice of nonrenewal at least 45 days before:

    a.  The expiration date of this policy, if the policy is written for a term of one year or less; or

    b.  The anniversary date of this policy, if the policy is written for a term of more than one year.

2.  We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

# PUBLIC OFFICIALS ERRORS AND OMISSIONS COVERAGE FORM CLAIMS-MADE
## for Government Risks

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered. We have no duty to provide coverage unless there has been full compliance with all the SECTION VI. CONDITIONS contained in this coverage part.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this coverage part. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under SECTION IV. WHO IS AN INSURED

Other words and phrases that appear in quotation marks have special meaning. Refer to SECTION VII. DEFINITIONS

SECTION I – COVERAGES

A.  Insuring Agreement – Liability for Wrongful Acts

1.  We will pay those sums that the insured becomes legally obligated to pay as "damages" resulting from a "wrongful act" to which this insurance applies. This insurance DOES NOT apply to any "claim" resulting from a "wrongful act" which takes place in whole or in part prior to the Retroactive Date shown in the Declarations or subsequent to the termination of this policy.

2.  We will have the right and duty to defend the insured against any "suit" seeking those "damages". However, we will have no duty to defend the insured against any "suit" seeking "damages" for a "wrongful act" to which this insurance does not apply. We may, at our discretion, investigate any "wrongful act" and settle any "claim" that may result.

    However:

    a.  The amount we will pay for "damages" is limited as described in SECTION V. LIMITS OF INSURANCE; and

    b.  Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments (Section I. D.).

3.  This insurance applies to "damages" resulting from a "wrongful act" only if the "wrongful act" was committed:

    a.  By an insured in the course and scope of their duties for you;

    b.  On or after the Retroactive Date shown in the Declarations and before the end of the policy period; and

    c.  A "claim" for "damages" is first made in writing against any insured during the policy period or any Extended Reporting Period we provide under SECTION VIII – EXTENDED REPORTING PERIODS

    A "claim" will be deemed to have been made when written notice of such "claim" is received by any insured or by us, whichever comes first. All "claims" resulting from a "wrongful act" or a series of "related wrongful acts" will be deemed to have been made when the first of those "claims" is made against any insured.

    Notice to us that:

    •   all or part of any insured's acts or omissions may in the future be discovered to be a "wrongful act"; and

    •   any insured may in the future receive written notice of a "wrongful act" or "claim";

    is not notice of a "wrongful act".

4.  We will consider each "wrongful act" in a series of "related wrongful acts" to have been committed on the date of the first "wrongful act", including any continuation, change or resumption of such "wrongful act".

This insurance applies to "damages" arising out of a "wrongful act" committed anywhere in the world, but only if the insured's liability for "damages" is determined in a "claim" on the merits brought: in the United States of America, including its territories and possessions and Puerto Rico; and Canada; or in a settlement agreed to by us.

B. Insuring Agreement – Liability for Employment Practices Offense

1. We will pay those sums that the insured becomes legally obligated to pay as "damages" resulting from an "employment practices offense" to which this insurance applies. This insurance DOES NOT apply to any "claim" resulting from an "employment practices offense" which takes place in whole or in part prior to the Retroactive Date shown in the Declarations or subsequent to the termination of this policy.

2. We will have the right and duty to defend the insured against any "suit" seeking those "damages". For the purposes of this Coverage B, "suit" shall include an Equal Employment Opportunity Commission (EEOC) hearing or proceeding or equivalent state or local agency hearing or proceeding. However, we will have no duty to defend the insured against any "suit" seeking "damages" for an "employment practices offense" to which this insurance does not apply. We may, at our discretion, investigate any "employment practices offense" and settle any "claim" that may result.

   However:

   a. The amount we will pay for "damages" is limited as described in SECTION V – LIMITS OF INSURANCE; and

   b. Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments (Section I. D).

3. This insurance applies to "damages" resulting from an "employment practices offense" only if the "employment practices offense" was committed:

   a. By an insured in the course and scope of their duties for you;

   b. On or after the Retroactive Date shown in the Declarations and before the end of the policy period; and

   c. A "claim" for "damages" is first made in writing against any insured during the policy period or any Extended Reporting Period we provide under SECTION VIII – EXTENDED REPORTING PERIODS

   A "claim" will be deemed to have been made when written notice of such "claim" is received by any insured or by us, whichever comes first. All "claims" resulting from an "employment practices offense" or a series of "related employment practices offenses" will be deemed to have been made when the first of those "claims" is made against any insured.

   Notice to us that:

   • all or part of any insured's acts or omissions may in the future be discovered to be an "employment practices offense"; and

   • any insured may in the future receive written notice of an "employment practices offense" or "claim";

   is not notice of an "employment practices offense".

4. We will consider each "employment practices offense" in a series of "related employment practices offenses" to have been committed on the date of the first "employment practices offense", including any continuation, change or resumption of such "employment practices offense".

   This insurance applies to "damages" arising out of an "employment practices offense" committed anywhere in the world, but only if the insured's liability for "damages" is determined in a "claim" on the merits brought in the United States of America, including its territories and possessions and Puerto Rico; and Canada; or in a settlement agreed to by us.

C. Insuring Agreement – Liability for Employee Benefit Administration Offenses

1. We will pay those sums that the insured becomes legally obligated to pay as "damages" resulting from an offense in the "administration" of your "employee benefit plans" to which this insurance applies. This insurance DOES NOT apply to any "claim" resulting from an offense in the "administration" of "employee benefit plans" which takes place in whole or in part prior to the Retroactive Date shown in the Declarations or subsequent to the termination of this policy.

2. We will have the right and duty to defend the insured against any "suit" seeking those "damages". However, we will have no duty to defend the insured against any "suit" seeking "damages" for an offense in the "administration" of "employee benefit plans" to which this insurance does not apply. We may, at our discretion, investigate any offense in the "administration" of "employee benefit plans" and settle any "claim" that may result.

Includes copyrighted material of Insurance Services Office, Inc.
Copyright 2007, OneBeacon Insurance Group
GRS EO 102 07 07

However:

    a.  The amount we will pay for "damages" is limited as described in SECTION V - LIMITS OF INSURANCE and

    b.  Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments (Section I. D.).

3.  This insurance applies to "damages" resulting from an offense in the "administration" of "employee benefit plans" only if the offense in the "administration" of "employee benefit plans" was committed:

    a.  On or after the Retroactive Date shown in the Declarations and before the end of the policy period; and

    b.  A "claim" for "damages" is first made in writing against any insured during the policy period or any Extended Reporting Period we provide under SECTION VIII – EXTENDED REPORTING PERIODS

A "claim" will be deemed to have been made when written notice of such "claim" is received by any insured or by us, whichever comes first. All "claims" resulting from an offense in the "administration" of your "employee benefit plans" or a series of related offenses will be deemed to have been made when the first of those "claims" is made against any insured.

Notice to us that:

    •  all or part of any insured's acts or omissions may in the future be discovered to be an offense; and

    •  any insured may in the future receive written notice of an offense or "claim";

is not notice of an offense in the "administration" of your "employee benefit plans".

4.  We will consider each offense in the "administration" of "employee benefit plans" in a series of related offenses to have been committed on the date of the first such offense including any continuation, change or resumption of such offense.

This insurance applies to "damages" arising out of an offense in the "administration" of "employee benefit plans" committed anywhere in the world, but only if the insured's liability for "damages" is determined in a "claim" on the merits brought in the United States of America, including its territories and possessions and Puerto Rico; and Canada; or in a settlement agreed to by us.

D.  Supplementary Payments

We will pay, with respect to any "claim" we investigate or settle, or any "suit" against an insured we defend, subject to your Deductible Amount:

1.  All expenses we incur.

2.  The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds, nor will we be a principal under these bonds.

3.  Up to $1,000 a day for loss of earnings (but not other income) because of attendance at hearings or trials at our request.

4.  All court costs taxed against the insured in the "claim", but only for that portion of the judgment we are obligated to pay. However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured. Instead, those costs, if awarded or paid in a settlement for a covered "claim", will be subject to SECTION V – LIMITS OF INSURANCE.

5.  Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

6.  All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

7.  The costs of any required appeal bond, but only for bond amounts for that portion of the judgment that is for "damages" that we are obligated to pay and which are within the applicable limit of insurance. We will pay or reimburse you for the cost of higher appeal bond amounts if we are required to do so. We do not have to furnish these bonds, nor will we be a principal under these bonds.

These payments will not reduce the limits of insurance. However, our duty to make such payments ends when we have used up the limit of coverage that applies with the payment of judgments or settlements.

## SECTION II – Your Deductible

Our obligation to pay "damages" on your behalf applies only to the amount of "damages" in excess of any Deductible Amount shown in the policy Declarations for Coverage A or Coverage B or Coverage C.

1. Limits of Insurance applicable to each "wrongful act", "employment practices offense", or an offense in the "administration" of your "employee benefit plans" will not be reduced by the Deductible Amount. The aggregate limit applicable to Coverage A or Coverage B or Coverage C will not be reduced by the application of the Deductible Amount.

2. The Deductible Amount applies to all "damages" and "loss adjustment expenses" for each "wrongful act", for each "employment practices offense", or for each offense in the "administration" of your "employee benefit plans" regardless of the number of insureds, persons, or organizations making "claims" or "claims" made because of such "wrongful act", "employment practices offense", or offense in the "administration" of your "employee benefit plans".

3. The terms of this insurance, including those with respect to:

    a. Our right and duty to defend any "suits" seeking those "damages"; and

    b. Your duties in the event of a "wrongful act", "employment practices offense", or for each offense in the "administration" of your "employee benefit plans" or "claim"

    apply irrespective of the application of the Deductible Amount.

4. We may pay any part or all of the Deductible Amount to effect settlement of any "claim" and, upon notification of the action taken, you shall promptly reimburse us for such part of the Deductible Amount paid by us.

## SECTION III – EXCLUSIONS

This insurance does not apply under either Coverage A or Coverage B or Coverage C to:

1. Asbestos, Fungi or Bacteria, Nuclear

    Any "claim" arising directly or indirectly out of, or in any way related to:

    a. asbestos or asbestos-containing materials;

    b. any radioactive matter or nuclear material;

    c. "fungi" or bacteria

2. Bodily Injury, Property Damage, Personal and Advertising Injury

    "Bodily injury", "property damage", or "personal and advertising injury" except "personal and advertising injury" when resulting from a covered "employment practices offense", under Coverage B of this Coverage Part.

    This exclusion does not apply to loss of use and/or value of tangible property that is not physically impaired as a result of a land use approval process or permitting process associated with land use or building.

3. Claims Against Other Insureds

    Any "claim" against any insured by any other insured.

    This exclusion does not apply to Coverage B, of this Coverage Part.

4. Contracts

    Any "claim" arising directly or indirectly out of, or in any way related to liability assumed under any contract or agreement or breach of contract to which the insured is a party or a third-party beneficiary, or any representations made in anticipation of such contract or agreement or any "claim" against any insured arising directly or indirectly out of, or in any way related to tortious interference with a contract or business relations. However this exclusion does not apply to liability the insured would have in the absence of the contract or agreement.

5. Criminal Acts

    Any "claim" arising directly or indirectly out of, or in any way related to a dishonest, malicious, fraudulent, or criminal act, or the willful violation of any statute, ordinance or regulation committed by or with the knowledge of the insured.

    However, we will defend the insured for a "suit" subject to the other terms of this coverage part until either a judgment or final adjudication established such an act or the insured confirms such an act.

Includes copyrighted material of Insurance Services Office, Inc.
Copyright 2007, OneBeacon Insurance Group
GRS EO 102 07 07

6.   Debt Financing

Any "claim" arising directly or indirectly out of, or in any way related to debt financing issued by or for you.

7.   Declaratory & Injunctive Relief

Any "claim" or any part of any "claim" seeking injunctive, declaratory or equitable relief and related costs inclusive of any attorneys' fees or attorneys' expenses. This includes any amount required to comply with a court or administrative order, judgment, ruling, or decree that results from any action or demand, including, but not limited to, costs of physical alterations required to comply with the Americans with Disabilities Act or similar laws.

This exclusion does not apply to our duty to defend an EEOC or similar state or local agency administrative hearing or proceeding under Coverage B. of this Coverage Part.

8.   Eminent Domain or Condemnation

Any "claim" arising directly or indirectly out of, or in any way related to any impairment, deprivation or destruction of property, including loss of use or diminution in value thereof, resulting from proceedings in eminent domain or from inverse condemnation, by whatever name called.

9.   Employment Practices

Any "claim" arising directly or indirectly out of, or in any way related to your "employment practices offenses". This exclusion does not apply to Coverage B. of this Coverage Part.

10.   ERISA, COBRA, OSHA, WARN and NLRA Act Liability

Any "claim" arising directly or indirectly out of, or in any way related to an insured's obligations under:

a.   the Employee Retirement Income Security Act of 1974 (ERISA);

b.   the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA);

c.   Fair Labor Standards Act of 1938 (except Equal Pay Act);

d.   the Worker Adjustment and Retraining Notification Act, Public Law 100-379 (1988) (WARN);

e.   Occupational Safety and Health Act (OSHA);

f.   National Labor Relations Act of 1947 (NLRA); or

g.   any similar federal, state, or local laws or regulations;

including subsequent amendments or any regulations promulgated thereunder.

This exclusion does not apply to a retaliation offense under Coverage B. of this Coverage Part.

11.   Failure to Maintain Insurance

The failure to effect or maintain:

a.   Insurance of any kind, including adequate limits of insurance; or

b.   Suretyship or bonds.

This exclusion does not apply to Coverage C of this Coverage Part.

12.   Fines and Penalties

Fines and penalties. This exclusion does not apply to punitive or exemplary damages where allowed by law.

13.   Governmental Enforcement Action

Any "claim" arising directly or indirectly out of, or in any way related to an insured's willful violation of any federal, state, or local law, rule, or regulation.

14.   Health Care and Social Services

Any "claim" arising directly or indirectly out of, or in any way related to a "health care and social services wrongful act", or services provided by any medical doctor, wherever provided or any services provided by a nurse at a nursing home, hospice or similar residential facility.

This exclusion does not apply to:

a.   an "employment practices offense" involving your health care or social service agency under Coverage B. of this Coverage Part;

b.   an offense in the "administration" of "employee benefit plans" involving your health care or social service agency under Coverage C of this Coverage Part.

Includes copyrighted material of Insurance Services Office, Inc.
Copyright 2007, OneBeacon Insurance Group

15. **Known Prior Acts**

Any "claim" arising directly or indirectly out of, or in any way related to any "wrongful act", "employment practices offense" or any offense in the "administration" of "employee benefit plans" which takes place prior to the inception date of this Coverage Part or any continuous Coverage Part issued by us or any affiliated insurance company, if any of your officers, your legal department or an "employee" you designate to give or receive notice of a "wrongful act", "employment practices offense" or offense in the "administration" of "employee benefit plans" knew or reasonably should have foreseen that such "wrongful act", "employment practices offense" or offense in the "administration" of "employee benefit plans" would give rise to a "claim".

A "wrongful act", "employment practices offense" or offense in the "administration" of "employee benefit plans" will be considered known to have taken place at the earliest time when any of your officers, your legal department or an "employee" you designate to give or receive notice of a "wrongful act", "employment practices offense" or offense in the "administration" of "employee benefit plans" or "claim":

(a) Reports all, or any part, of the "wrongful act", "employment practices offense" or any offense in the "administration" of "employee benefit plans" to us or any other insurer;

(b) Receives a written or verbal demand or "claim" for damages; or

(c) Becomes aware by any other means that a "wrongful act", "employment practices offense" or offense in the "administration" of "employee benefit plans" has taken place or has begun to take place.

16. **Law Enforcement**

Any "claim" arising directly or indirectly out of, or in any way related to any "law enforcement activity". This exclusion does not apply to:

a. an "employment practices offense" committed by your law enforcement agency under Coverage B. of this Coverage Part;

b. an offense in the "administration" of "employee benefit plans" committed by your law enforcement agency under Coverage C. of this Coverage Part.

17. **Performance of Employee Benefit Plans**

Any "employment practices offense" or any offense in the "administration" of "employee benefit plans" arising directly or indirectly out of, or in any way related to:

a. Failure of any investment program, individual securities or savings program to perform as held forth by or represented by an insured;

b. Advice given by an insured in connection with participation or non-participation in stock subscription plans, savings programs or any other "employee benefit plan";

c. Errors in providing information or failing to provide information on past performance of investment vehicles;

d. Failure of any insured or any insurer, fiduciary, trustee or fiscal agent to perform any of their duties or obligations or to fulfill any of their guarantees with respect to the payment of benefits under "employee benefit plans" or the providing, handling or investment of funds;

e. The liability of others which is assumed by any insured under a contract or agreement, except to the extent the insured would have been liable in the absence of the contract or agreement;

f. Any "claim" for the return of compensation paid by any insured if a court determines that the payment was illegal; or

g. Any "claim" for benefits that are lawfully paid or payable to a beneficiary from the funds of an "employee benefit plan".

18. **Pollution**

a. Any "claim" arising directly or indirectly out of, or in any way related to the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

b. Any "claim" arising directly or indirectly or in any way related to any:

(1) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

(2) Any "claim" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

Includes copyrighted material of Insurance Services Office, Inc.
Copyright 2007, OneBeacon Insurance Group

GRS EO 102 07 07

19. **Profit, Advantage or Remuneration**

Any "claim" arising directly or indirectly out of, or in any way related to any insured gaining any profit, advantage or remuneration to which that insured is not legally entitled.

20. **Sexual Abuse**

Any "claim" arising directly or indirectly out of, or in any way related to "sexual abuse" of any person; or the negligent:

   a. employment;

   b. investigation;

   c. supervision;

   d. reporting to the proper authorities, or failing to so report;

   e. retention;

of any person who actually or allegedly committed or attempted to commit "sexual abuse" for whom any insured is or ever was legally responsible.

21. **Strikes, Riot, Civil Commotion or Mob Action**

Any "claim" arising directly or indirectly out of, or in any way related to any lockout, strike, picket line, replacement or other similar actions resulting from labor disputes or labor negotiations or any act or omission in connection with the prevention or suppression of a riot, civil commotion or mob action.

22. **Tax Assessments**

Any "claim" arising directly or indirectly out of, or in any way related to any tax assessments or adjustments, or the collection, refund, disbursement or application of any taxes. This exclusion does not apply to the use or prioritization of your operating funds.

23. **War**

Any "claim", however caused, arising directly or indirectly out of, or in any way related to:

   a. War, including undeclared or civil war;

   b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

24. **Workers' Compensation and Similar Laws**

Any "claim" arising directly or indirectly out of, or in any way related to any obligation of any insured under a workers' compensation, disability benefits or unemployment compensation law, or any similar law.

## SECTION IV – WHO IS AN INSURED

If you are designated in the Declarations as a governmental unit, you are an insured. Each of the following is also an insured;

1. Your current or previously elected or appointed officials, but only for the conduct of their duties as your elected or appointed officials.

2. Any authorities, boards, commissions, councils, districts or other governmental units of the named insured and their employees, which you control and which is funded and operated as part of your total operating budget, and for which no other similar insurance is available.

3. Your "employee" or "volunteer workers" but only for acts within the course and scope of their employment or volunteer activities by or for you.

4. Any person or organization providing services to you under any mutual aid or similar agreement, but only within the scope of the mutual aid or agreement.

Upon death of an insured, their legal representative, but only with respect to duties as such. That representative will have all the rights and duties of such insured.

Includes copyrighted material of Insurance Services Office, Inc.
Copyright 2007, OneBeacon Insurance Group

## SECTION V – LIMITS OF INSURANCE

1. Regardless of the number of covered insureds, claimants or "claims" made, the most we will pay for the sum of all "damages" resulting from any one "wrongful act" or "related wrongful acts" is the Each Wrongful Act Limit shown in the Declarations.

2. Regardless of the number of covered insureds, claimants or "claims" made, the most we will pay for the sum of all "damages" resulting from any one "employment practices offense" or "related employment practices offenses" is the Each Employment Practices Offense Limit shown in the Declarations.

3. Regardless of the number of covered insureds, claimants or "claims" made, the most we will pay for the sum of all "damages" resulting from any one offense or series of related offenses in Employee Benefit Administration is the Each Employee Benefit Administration Offense Limit shown in the Declarations.

4. The most we will pay for all "damages", "claims", "suits" or actions under Coverage A is the Wrongful Act Aggregate Limit shown in the Declarations.

5. The most we will pay for all "damages", "claims", "suits" or actions under Coverage B is the Employment Practices Offense Aggregate Limit shown in the Declarations.

6. The most we will pay for all "damages", "claims", "suits" or actions under Coverage C is the Each Employee Benefit Administration Aggregate Limit shown in the Declarations.

## SECTION VI – CONDITIONS

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of A Wrongful Act, Employment Practices Offense, Employee Benefit Administration Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of a "wrongful act", "employment practices offense", an offense in the "administration" of your "employee benefit plans", or an offense which may result in a "claim". To the extent possible, notice should include:

      (1) How, when and where the "wrongful act", "employment practices offense", or an offense in the "administration" of your "employee benefit plans", took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or "damage" arising out of the "wrongful act", "employment practices offense", or an offense in the "administration" of your "employee benefit plans".

      (4) The manner in which each insured first became aware of the circumstances involved.

   Notice of a "wrongful act", "employment practices offense" or an offense in the "administration" of "employee benefit plans" is not notice of a "claim".

   b. If a "claim" is made against any insured, you must:

      (1) Immediately record the specifics of the "claim" and the date received; and

      (2) Notify us as soon as practicable.

   You must see to it that we receive written notice of the "claim" as soon as practicable.

   c. You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim";

      (2) Authorize us to obtain records and other information;

      (3) Cooperate with us in the investigation or settlement of the "claim" or defense against the "suit"; and

      (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of "damages" to which this insurance may also apply.

   d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. **Legal Action Against Us**

   No person or organization has a right under this Coverage Part:

   a. To join us as a party or otherwise bring us into a "suit" asking for "damages" from an insured; or

Includes copyrighted material of Insurance Services Office, Inc.
Copyright 2007, OneBeacon Insurance Group

GRS EO 102 07 07

b.   To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for "damages" that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

4.   Other Insurance

If other valid and collectible insurance is available to any insured for a loss we cover under Coverages A, B or C of this Coverage Part, our obligations are limited as follows:

Other Insurance means insurance, or the funding of losses, that is provided by or through:

- Another insurance company;
- Any of our affiliated insurance companies;
- Any risk retention group;
- Any self-insurance, group self-insurance, or similar risk transfer approach, other than any funded by you and to which this coverage part applies.

However, other insurance does not mean umbrella or excess insurance issued to you to apply in excess of the limits of this coverage part.

a.   Primary Insurance

This insurance is primary except when Paragraph b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph c. below.

b.   Excess Insurance

1.   This insurance is excess over any other primary insurance available to you covering liability for "damages" arising out of "wrongful acts", "employment practices offense" or an offense in the "administration" of "employee benefit plans".

2.   This insurance is excess over any other insurance that is available during any applicable Supplemental Reporting Period, whether on a primary, excess, contingent, or any other basis.

3.   When this insurance is excess, we will have no duty under Coverages A, B or C to defend any insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

4.   When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(a)   The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(b)   The total of all deductible and self-insured amounts under all that other insurance.

5.   We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

c.   Method Of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

d.   Risk Transfer

Whenever you enter into an agreement with another party requiring the other party to provide liability insurance to you, this Coverage Part will be excess over any other valid and collectible insurance that has been provided to you, except insurance specifically arranged to be excess of this Coverage Part.

When this insurance is excess, we will have no duty under Coverages A, B or C to defend any insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

5. **Premium Audit**

   a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

   b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

   c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

   d. We may waive this condition at our option.

6. **Representations**

   By accepting this policy, you agree:

   a. The statements in the Declarations are accurate and complete;

   b. Those statements are based upon representations you made to us; and

   c. We have issued this policy in reliance upon your representations.

   The unintentional error or omission in any information provided by you will not be deemed to be a misrepresentation. However, this provision does not affect our right to collect additional premium or to exercise our rights of cancellation or non-renewal.

7. **Separation Of Insureds**

   Except with respect to all exclusions contained within Section I – Coverages, Section V - Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

   a. As if each Named Insured were the only Named Insured; and

   b. Separately to each insured against whom "claim" is made.

8. **Transfer Of Rights Of Recovery Against Others To Us**

   If any insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

9. **When We Do Not Renew**

   If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

   If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION VII – DEFINITIONS

1. "Administration" means any of the following acts that you do or authorize a person to do:

   a. Counseling "employees" or "volunteer workers", other than giving legal advice, on "employee benefit plans";

   b. Interpreting your "employee benefit plans";

   c. Handling records for your "employee benefit plans"; and

   d. Effecting enrollment, termination or cancellation of "employees" or "volunteer workers" under your "employee benefit plans".

2. "Bodily injury" means physical harm, sickness or disease sustained by a person, including death resulting from any of these at any time. "Bodily injury" also includes mental anguish, emotional distress, or illness if the mental anguish emotional distress or illness results from such physical harm, sickness or disease at any time. "Bodily injury" also includes loss of care or services resulting from such physical harm, sickness or disease at any time.

3. "Claim(s)" means an oral or written demand, including a "suit", for payment of money "damages".

4. "Computer system" means all associated hardware, software, and electronic data.

5. "Damages" means money damages. "Damages" does not include any amount awarded as liquidated damages pursuant to any federal or state statute nor the multiple portion of any multiplied damage award.

Includes copyrighted material of Insurance Services Office, Inc.
Copyright 2007, OneBeacon Insurance Group

GRS EO 102 07 07

6. "Discrimination" means violation of a person's civil rights with respect to such person's race, color, national origin, religion, gender, marital status, age, sexual orientation or preference, physical or mental condition, or any other protected class or characteristic established by any federal, state or local statutes, rules or regulations.

7. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

8. "Employee benefit plans" means group life insurance, group accident or health insurance, profit sharing plans, pension plans, employee stock subscription plans, employee travel, vacation, or savings plans, workers compensation, unemployment insurance, social security and disability benefits insurance, and any other similar benefit program applying to employees or volunteers.

9. "Employment practices offense(s)" means any of the following involving an actual, prospective, or former "employee" or "volunteer worker":

   a. Demotion or failure to promote, negative evaluation, reassignment or discipline of your current "employee" or "volunteer worker" or wrongful refusal to employ;

   b. Wrongful termination, meaning the actual or constructive termination of an "employee" or "volunteer worker";

   c. Negligent hiring or supervision which results in any of the other offenses listed in this definition;

   d. Retaliatory action against an "employee" or "volunteer worker";

   e. Coercing an "employee" or "volunteer worker" to commit an unlawful act or omission within the scope of that person's employment;

   f. Work-related harassment or "sexual harassment";

   g. Employment-related libel, slander, invasion of privacy, defamation, humiliation or misrepresentation;

   h. Other work-related verbal, physical, mental or emotional abuse arising from "discrimination";

10. "Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or by-products produced or released by "fungi".

11. "Health care and social services wrongful act" means an error, omission, or negligent act:

    a. in the performance of or failure to perform health care services by an "employee" or "volunteer worker" who is a first responder, nurse, jail nurse, emergency medical technician, or paramedic while acting within the scope of his or her duties for you;

    b. in the performance of or failure to perform social services including counseling, advice and instruction, by any licensed, certified, or trained "employee" or "volunteer worker" of your social services department, health and human services, health clinic or similar operation;

    c. in the handling of patients by an "employee" or "volunteer worker" who is a first responder, nurse, jail nurse, emergency medical technician or paramedic:

       (1) from the place where they are accepted for movement into or onto the means of transport,

       (2) during transport, and

       (3) from the means of transport to the place where they are finally delivered; and

    d. relating to the dispatching of, including the failure or refusal to dispatch, personnel to provide any of the above services.

12. "Law enforcement activity(ies)" means:

    a. any official activity conducted in the course of your law enforcement operations;

    b. any officially sanctioned off-duty activity conducted in the course of law enforcement operations;

    c. ownership, maintenance, operation or use of any premises by your law enforcement operations;

    d. any criminal prosecution activity by judicial officers, prosecution attorneys, and staff other than public defenders or criminal defense attorneys.

13. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

14. "Loss adjustment expenses" means our expenses incurred to adjust a "claim" and include fees paid to attorneys, experts, and investigators used to defend a "suit". "Loss adjustment expenses" does not include the cost of our salaried claims staff and their office expenses or independent adjusters

Includes copyrighted material of Insurance Services Office, Inc.
Copyright 2007, OneBeacon Insurance Group

15. "Network security" means your activities to protect your "computer system" from malicious code or unauthorized use or unauthorized access.

16. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    a. False arrest, detention or imprisonment;

    b. Malicious prosecution;

    c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    d. "Publication" of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    e. "Publication" of material that violates a person's right of privacy;

    f. The use of another's advertising idea in your advertisement; or

    g. Infringing upon another's copyright, trade dress or slogan in your advertisement.

17. "Personal information" means an individual's social security number, medical or healthcare data, other protected health information, drivers license number, state identification number, credit card number, debit card number, account number, account histories, passwords, or other nonpublic personal information as defined in "Privacy Regulations". "Personal information" shall not include information that is lawfully made available to the general public for any reason, including but not limited to information from federal, state or local government records.

18. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

19. "Privacy regulations" means the following statutes and regulations associated with the care, custody, control or use of personally identifiable financial, medical or other sensitive information:

    a. Health Insurance Portability and Accountability Act of 1996 (Public Law 104-191);

    b. Gramm-Leach-Bliley Act of 1999;

    c. California Security Breach Notification Act (CA SB 1386),

    d. Section 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a), but solely for alleged violations of unfair or deceptive acts or practices in or affecting commerce; or

    e. other similar state, federal, and foreign identity theft and privacy protection legislation that requires commercial entities that collect "personal information" to post privacy policies, adopt specific privacy or security controls, or notify individuals in the event that "personal information" has potentially been compromised.

20. "Property damage" means:

    a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

    For the purposes of this insurance, electronic data is not tangible property.

    As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

21. "Publication" means any method of announcing or disseminating any material to any third party.

22. "Related employment practices offenses" means any multiple, repeated, or continuous "employment practices offense" that is causally connected by facts or circumstances or a series of any "employment practices offenses" causally connected by the same facts or circumstances

23. "Related wrongful acts" means any multiple, repeated, or continuous "wrongful act" that is causally connected by facts or circumstances or a series of any "wrongful acts" causally connected by the same facts or circumstances.

Includes copyrighted material of Insurance Services Office, Inc.
Copyright 2007, OneBeacon Insurance Group

GRS EO 102 07 07

24. "Sexual abuse" means any actual, attempted or alleged sexual conduct by a person, or by persons acting in concert, which causes injury. "Sexual abuse" includes sexual molestation, sexual assault, sexual exploitation or sexual injury, but does not include "sexual harassment".

25. "Sexual harassment" means any actual, attempted or alleged unwelcome sexual advances, requests for sexual favors, or other conduct of a sexual nature by a person, or by persons acting in concert, which causes injury. "Sexual harassment" includes:

   a. The above conduct when submission to or rejection of such conduct is made either explicitly or implicitly a condition of a person's employment, or a basis for employment decisions affecting a person; or

   b. The above conduct when such conduct has the purpose or effect of unreasonably interfering with a person's work performance or creating an intimidating, hostile or offensive work environment.

26. "Suit" means a civil proceeding alleging "damages" to which this insurance applies. "Suit" includes:

   a. An arbitration proceeding in which "damages" are claimed and to which the insured must submit or does submit with our consent; or

   b. Any other alternative dispute resolution proceeding in which "damages" are claimed and to which the insured submits with our consent.

27. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

28. "Volunteer worker" means a person who is not your "employee" and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

29. "Wrongful act(s)" means any actual or alleged act, error, misstatement, misleading statement, omission, neglect or breach of duty by an insured. "Wrongful act" includes violations of "privacy regulations" and your liability for "damages" to others due to any actual or alleged act, error, misstatement, misleading statement, omission, neglect or breach relating to "network security":

SECTION VIII – EXTENDED REPORTING PERIODS

1. We will provide one or more Extended Reporting Periods, as described below, if:

   a. This Coverage Part is cancelled or not renewed; or

   b. We renew or replace this Coverage Part with insurance that:

     (1) Has a Retroactive Date later than the date shown in the Declarations of this Coverage Part; or

     (2) Does not apply to a "wrongful act", "employment practices offense" or offense in the "administration" of "employee benefit plans" on a claims-made basis.

2. Extended Reporting Periods do not extend the policy period or change the scope of coverage provided. They apply only to "claims" for:

   a. A "Wrongful act", "employment practices offense" or offense in the "administration" of "employee benefit plans" that take place before the end of the policy period but not before the Retroactive Date, if any, shown in the Declarations.

   Once in effect, Extended Reporting Periods may not be cancelled and the entire premium shall be deemed fully earned and non-refundable upon payment.

3. A Basic Extended Reporting Period is automatically provided without additional charge. This period starts with the end of the policy period and lasts for sixty days. During this period, you will have the right, subject to part 2. of this section, to report "claims" made and consistent and in accordance with paragraph 2.a. of PART VI – CONDITIONS, any "wrongful act", "employment practices offense" or offense in the "administration" of "employee benefit plans" which may later result in a "claim".

   The Basic Extended Reporting Period does not apply to "claims" that are covered under any subsequent insurance you purchase, or that would be covered but for exhaustion of the amount of insurance applicable to such "claims".

4. The Basic Extended Reporting Period does not reinstate or increase the Limits of Insurance.

5. A Supplemental Extended Reporting Period is available, but only by an endorsement and for an extra charge. This supplemental period starts when the Basic Extended Reporting Period, set forth in paragraph 3. above, ends.

Includes copyrighted material of Insurance Services Office, Inc.
Copyright 2007, OneBeacon Insurance Group

You must give us a written request for the endorsement within 60 days after the end of the policy period. The Supplemental Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due and you have fulfilled all other duties, and complied with all other conditions and requirements, under this Coverage Part.

We will determine the additional premium in accordance with our rules and rates. In doing so, we may take into account the following:

a.  The exposures insured;

b.  Previous types and amounts of insurance;

c.  Limits of Insurance available under this Coverage Part for future payment of "damages"; and

d.  Other related factors.

The additional premium will not exceed 200% of the annual premium for this Coverage Part

This endorsement shall set forth the terms, not inconsistent with this Section, applicable to the Supplemental Extended Reporting Period, including a provision to the effect that the insurance afforded for "claims" first received during such period is excess over any other valid and collectible insurance available under policies in force after the Supplemental Extended Reporting Period starts.

6.  If the Supplemental Extended Reporting Period is in effect, we will provide the supplemental aggregate limits of insurance described below, but only for "claims" first received and recorded during the Supplemental Extended Reporting Period.

The supplemental aggregate limits of insurance will be equal to the dollar amount shown in the Declarations in effect at the end of the policy period for such of the following limits of insurance for which a dollar amount has been entered:

Each Wrongful Act

Each Employment Practices Offense

Each Employee Benefit Administration

Wrongful Act Aggregate Limit

Employment Practices Offense Aggregate Limit

Employee Benefit Administration Aggregate Limit

The LIMITS OF INSURANCE (Section V) provisions of this coverage part will be amended accordingly.

Includes copyrighted material of Insurance Services Office, Inc.
Copyright 2007, OneBeacon Insurance Group

GRS EO 102 07 07

Policy Number: 791-00-03-08-0001

**PROFESSIONAL LIABILITY COVERAGE PART DECLARATIONS**

Limits of Insurance

| | |
|---|---|
| Public Officials Errors & Omissions | $1,000,000 Each Wrongful Act<br>$1,000,000 Aggregate<br>$5,000 Deductible Each<br>Wrongful Act<br>01/09/1996 Retro Date |
| Public Officials Employment Practices | $1,000,000 Each Offense<br>$1,000,000 Aggregate<br>$5,000 Deductible Each<br>Offense<br>01/09/1996 Retro Date |
| Public Officials Employee Benefits Administration | $1,000,000 Each Offense<br>$3,000,000 Aggregate<br>$1,000 Deductible Each<br>Offense<br>01/09/1996 Retro Date |
| Law Enforcement Liability | $1,000,000 Each Wrongful Act<br>$1,000,000 Aggregate<br>$5,000 Deductible Each<br>Wrongful Act<br>01/09/1996 Retro Date |

Forms applicable to the Professional Liability Coverage Part:
See ASC 00 11 01 98, Schedule 7

3 2-72-0010 01/25/2011   MSP CPW PR 1.000

Copyright 1999, OneBeacon Insurance Group<br>MANUSCRIPTED

# SCHEDULE 7

Effective 01/09/2011 , this schedule forms a part of Policy No. 791-00-03-08-0001
(At the time stated in the policy)
Issued to

COMMISSIONERS OF CLINTON COUNTY,
INDIANA

Producer: GREGORY & APPEL, INC.

by OneBeacon America Insurance Company

Commercial Professional Liability Coverage Part Declarations,
APR 005 02 99, Continued

Forms Applicable to the Professional Liability Coverage Part:

APR 005 02 99         PROFESSIONAL LIAB DECLARATIONS
GRS EO 102 07 07      PUBLIC OFFICIALS ERRORS & OMISSIONS - CLAIMS
                      MADE
GRS EO IN 01 07 07    IN CHANGES - CANCELLATION AND NONRENEWAL
GRS LE 102 07 07      LAW ENFORCEMENT LIABILITY COVERAGE FORM -
                      CLAIMS MADE
GRS LE IN 01 07 07    IN CHANGES - CANCELLATION AND NONRENEWAL
ASC 00 11 01 98       Schedule 7 - PROF LIAB POLICY FORMS LIST

3 2-72-0010 01/25/2011  MSP CPW PR 1.000

# LAW ENFORCEMENT LIABILITY COVERAGE FORM
# CLAIMS-MADE
## for Government Risks

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered. We have no duty to provide coverage unless there has been full compliance with all the SECTION VI – CONDITIONS contained in this coverage part.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under SECTION IV – WHO IS AN INSURED.

Other words and phrases that appear in quotation marks have special meaning. Refer to SECTION VII – DEFINITIONS.

## SECTION I – COVERAGES

A. Insuring Agreement – Liability for Law Enforcement Wrongful Acts

1. We will pay those sums that the insured becomes legally obligated to pay as "damages" resulting from a "law enforcement wrongful act" to which this insurance applies. This insurance DOES NOT apply to any "claim" resulting from a "law enforcement wrongful act" which takes place in whole or in part prior to the Retroactive Date Shown in the Declarations or subsequent to the termination of this policy.

2. We will have the right and duty to defend the insured against any "suit" seeking those "damages". However, we will have no duty to defend the insured against any "suit" seeking "damages" for a "law enforcement wrongful act" to which this insurance does not apply. We may, at our discretion, investigate any "law enforcement wrongful act" and settle any "claim" that may result.

   However:

   a. The amount we will pay for "damages" is limited as described in SECTION V – LIMITS OF INSURANCE; and

   b. Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS (SECTION I. B.).

3. This insurance applies to "damages" resulting from a "law enforcement wrongful act" only if the "law enforcement wrongful act" was committed:

   a. By an insured in the course and scope of their "law enforcement activities" for you;

   b. On or after the Retroactive Date shown in the Declarations and before the end of the policy period; and

   c. A "claim" for "damages" is first made in writing against any insured during the policy period or any Extended Reporting Period we provide under SECTION VIII – EXTENDED REPORTING PERIODS.

A "claim" will be deemed to have been made when written notice of such "claim" is received by any insured or by us, whichever comes first. All "claims" resulting from a "law enforcement wrongful act" or a series of "related law enforcement wrongful acts" will be deemed to have been made when the first of those "claims" is made against any insured.

Notice to us that:

- all or part of any insured's acts or omissions may in the future be discovered to be a "law enforcement wrongful act"; and

- any insured may in the future receive written notice of a "law enforcement wrongful act" or "claim";

is not notice of a "law enforcement wrongful act".

4. We will consider each "law enforcement wrongful act" in a series of "related law enforcement wrongful acts" to have been committed on the date of the first "law enforcement wrongful act", including any continuation, change or resumption of such "law enforcement wrongful act".

This insurance applies to "damages" arising out of a "law enforcement wrongful act" committed anywhere in the world, but only if the insured's liability for "damages" is determined in a "claim" on the merits brought in the United States of America, including its territories and possessions and Puerto Rico; Canada; or in a settlement agreed to by us.

B. Supplementary Payments

We will pay, with respect to any "claim" we investigate or settle, or any "suit" against an insured we defend, subject to your Deductible Amount:

1. All expenses we incur.

2. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds, nor will we be a principal under these bonds.

3. Up to $1,000 a day for loss of earnings (but not other income) because of attendance at hearings or trials at our request.

4. Up to $25,000 for each "law enforcement wrongful act" for property damage to personal property of others in your care, custody, or control.

5. All court costs taxed against the insured in the "claim", but only for that portion of the judgment we are obligated to pay. However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured. Instead, those costs, if awarded or paid in a settlement for a covered "claim", will be subject to SECTION V -- LIMITS OF INSURANCE.

6. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

7. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

8. The costs of any required appeal bond, but only for bond amounts for that portion of the judgment that is for "damages" that we are obligated to pay and which are within the applicable limit of insurance. We will pay or reimburse you for the cost of higher appeal bond amounts if we are required to do so. We do not have to furnish these bonds, nor will we be a principal under these bonds.

These payments will not reduce the limits of insurance. However, our duty to make such payments ends when we have used up the limit of coverage that applies with the payment of judgments or settlements.

## SECTION II -- YOUR DEDUCTIBLE

Our obligation to pay "damages" on your behalf applies only to the amount of "damages" in excess of any Deductible Amount shown in the policy Declarations.

1. Limits of Insurance applicable to each "law enforcement wrongful act" will not be reduced by the Deductible Amount. The aggregate limit will not be reduced by the application of the Deductible Amount.

2. The Deductible Amount applies to all "damages" and "loss adjustment expenses" for each "law enforcement wrongful act" regardless of the number of insureds, persons, or organizations making "claims" or "claims" made because of such "law enforcement wrongful act".

3. The terms of this insurance, including those with respect to:

   a. Our right and duty to defend any "suits" seeking those "damages"; and

   b. Your duties in the event of a "law enforcement wrongful act", or "claim"

   apply irrespective of the application of the Deductible Amount.

4. We may pay any part or all of the Deductible Amount to effect settlement of any "claim" and, upon notification of the action taken; you shall promptly reimburse us for such part of the Deductible Amount paid by us.

Includes copyrighted material of Insurance Services Office, Inc.
Copyright 2007, OneBeacon Insurance Group

GRS LE 102 07 07

SECTION III -- EXCLUSIONS

This insurance does not apply to:

1. **Asbestos, Fungi or Bacteria, Nuclear**

   Any "claim" arising directly or indirectly out of, or in any way related to:

   (a) asbestos or asbestos-containing materials;

   (b) any radioactive matter or nuclear material.

   (c) "fungi" or bacteria

2. **Aircraft, Auto Or Watercraft**

   Any "claim" arising directly or indirectly out of, or in any way related to the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

   This exclusion applies even if the "claim" against any insured allege any act, error, or omission related to the policies, practices, procedures, supervision, hiring, employment, training or monitoring of others by that insured, if the "law enforcement wrongful act" which resulted in damages involving the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

   This exclusion does not apply to:

   (a) A watercraft you do not own that is used in your "law enforcement activity";

   (b) A watercraft you own that is not powered by a motor, or powered by a motor or a combination of motors of 100 horsepower or less, or a personal watercraft that is used in your "law enforcement activity";

   (c) An aircraft chartered with crew and pilot. This exception does not apply if the aircraft is owned or the aircraft is being used to carry any person or property for a charge.

3. **Contracts**

   Any "claim" arising directly or indirectly out of, or in any way related to liability assumed under any contract or agreement or breach of contract to which the insured is a party or a third-party beneficiary, or any representations made in anticipation of such contract or agreement, or any "claim" against any insured arising directly or indirectly out of, or in any way related to tortious interference with a contract or business relations. However this exclusion does not apply to liability the insured would have in the absence of the contract or agreement, or a mutual law enforcement assistance agreement.

4. **Criminal Acts**

   Any "claim" arising directly or indirectly out of, or in any way related to a dishonest, malicious, fraudulent, or criminal act, or the willful violation of any statute, ordinance or regulation committed by or with the knowledge of the insured.

   However, we will defend the insured for a "suit" subject to the other terms of this coverage part until either a judgment or final adjudication established such an act or the insured confirms such an act.

   This exclusion does not apply to "claims" of malicious prosecution.

5. **Declaratory & Injunctive Relief**

   Any "claim" or any part of any "claim" seeking injunctive, declaratory or equitable relief, and related costs inclusive of any attorneys' fees or attorneys' expenses. This includes any amount required to comply with a court or administrative order, judgment, ruling, or decree that results from any action or demand, including, but not limited to, costs of physical alterations required to comply with the Americans with Disabilities Act or similar laws.

6. **Employer's Liability**

   Any "claim" by:

   (a) An "employee" of the insured arising out of and in the course of:

      (1) Employment by the insured; or

      (2) Performing duties related to the conduct of the insured's business; or

Includes copyrighted material of Insurance Services Office, Inc.
Copyright 2007, OneBeacon Insurance Group

(b) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

    (1) whether the insured may be liable as an employer or in any other capacity; and

    (2) to any obligation to share damages with or repay someone else who must pay damages because of the injury.

7. Employment Related Practices

Any "claim" arising directly or indirectly out of, or in any way related to an actual or alleged improper employment related practice, policy, act, omission or supervision involving an actual, prospective, or former "volunteer worker" or "employee".

8. Health Care and Social Services

Any "claim" arising directly or indirectly out of, or in any way related to a "health care and social services wrongful act", or services provided by any medical doctor, wherever provided or any services provided by a nurse at a nursing home, hospice or similar residential facility.

This exclusion does not apply to your "law enforcement activity" of a first responder who is not a nurse, jail nurse, emergency medical technician, or paramedic.

9. Known Prior Acts

Any "claim" arising directly or indirectly out of, or in any way related to any "law enforcement wrongful act" which takes place prior to the inception date of this Coverage Part or any continuous Coverage Part issued by us or any affiliated insurance company, if any of your officers, your legal department or an "employee" you designate to give or receive notice of a "law enforcement wrongful act" knew or reasonably should have foreseen that such "law enforcement wrongful act" would give rise to a "claim".

A "law enforcement wrongful act" will be considered known to have taken place at the earliest time when any of your officers, your legal department or an "employee" you designate to give or receive notice of a "law enforcement wrongful act" or "claim";

(a) Reports all, or any part, of the "law enforcement wrongful act" to us or any other insurer;

(b) Receives a written or verbal demand or "claim" for damages; or

(c) Becomes aware by any other means that a "law enforcement wrongful act" has taken place or has begun to take place.

10. Pollution

(a) Any "claim" arising directly or indirectly out of, or in any way related to the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

(b) Any "claim" arising directly or indirectly or in any way related to any:

    (1) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

    (2) Any "claim" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

This exclusion does not apply from the use of mace, pepper spray, or tear gas.

11. Property Damage

Damage to property you own, rent, or occupy and damage to personal property in your care, custody or control, except as specifically provided under coverage I. B. Supplementary Payments.

12. Volunteers & Others

Any "claim" by any of your "volunteer workers", "leased workers", "temporary workers" or independent contractors.

Includes copyrighted material of Insurance Services Office, Inc.
Copyright 2007, OneBeacon Insurance Group

13. War

Any "claim", however caused, arising directly or indirectly out of, or in any way related to:

(a) War, including undeclared or civil war;

(b) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(c) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

14. Workers Compensation and Similar Laws

Any "claim" arising directly or indirectly out of, or in any way related to any obligation of any insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

## SECTION IV – WHO IS AN INSURED

If you are designated in the Declarations as a governmental unit, you are an insured. Each of the following is also an insured but only with respect to your "law enforcement activity";

1. Your current or previously elected or appointed officials, but only for the conduct of their duties as your elected or appointed officials.

2. Your "employee" or "volunteer workers" but only for acts within the course and scope of their employment or volunteer activities by or for you;

3. Any person or organization providing services to you under any mutual aid or similar agreement, but only within the scope of the mutual aid or agreement

4. Owners of commandeered equipment other than an "auto" while the equipment is in your temporary custody and control.

Upon death of an insured, their legal representative, but only with respect to duties as such. That representative will have all the rights and duties of such insured.

## SECTION V – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. "Claims" made; or

c. Persons or organizations making "claims".

2. The Aggregate Limit is the most we will pay for all "law enforcement wrongful acts".

3. The Coverage A Limit is the most we will pay for each "law enforcement wrongful act" or "related law enforcement wrongful acts".

## SECTION VI – CONDITIONS

1. Bankruptcy

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. Duties In The Event Of A Law Enforcement Wrongful Act, Claim Or Suit

a. You must see to it that we are notified as soon as practicable of a "law enforcement wrongful act" which may result in a "claim". To the extent possible, notice should include:

(1) How, when and where the "law enforcement wrongful act" took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or "damage" arising out of the "law enforcement wrongful act".

(4) The manner in which each insured first became aware of the circumstances involved.

Notice of a "law enforcement wrongful act" is not notice of a "claim".

b.  If a "claim" is made against any insured, you must:

(1) Immediately record the specifics of the "claim" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the "claim" as soon as practicable.

c.  You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the "claim" or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of "damages" to which this insurance may also apply.

d.  No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3.  Legal Action Against Us

No person or organization has a right under this Coverage Part:

a.  To join us as a party or otherwise bring us into a "suit" asking for "damages" from an insured; or

b.  To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

4.  Other Insurance

If other valid and collectible insurance is available to any insured for a loss we cover under this Coverage Part, our obligations are limited as follows:

Other Insurance means insurance, or the funding of losses, that is provided by or through:

- Another insurance company;
- Any of our affiliated insurance companies;
- Any risk retention group;
- Any self-insurance, group self-insurance, or similar risk transfer approach, other than any funded by you and to which this coverage part applies.

However, other insurance does not mean umbrella or excess insurance issued to you to apply in excess of the limits of this coverage part.

a.  Primary Insurance

This insurance is primary except when Paragraph b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph c. below.

b.  Excess Insurance

(1) This insurance is excess over any other primary insurance available to you covering liability for "damages" arising out of "law enforcement wrongful acts".

(2) This insurance is excess over any other insurance that is available during any applicable Supplemental Reporting Period, whether on a primary, excess, contingent, or any other basis.

(3) When this insurance is excess, we will have no duty under this Coverage Part to defend any insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

(4) When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(a) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(b) The total of all deductible and self-insured amounts under all that other insurance.

Includes copyrighted material of Insurance Services Office, Inc.
Copyright 2007, OneBeacon Insurance Group
GRS LE 102 07 07

(5) We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

c.   Method Of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

d.   Risk Transfer

Whenever you enter into an agreement with another party requiring the other party to provide liability insurance to you, this Coverage Part will be excess over any other valid and collectible insurance that has been provided to you, except insurance specifically arranged to be excess of this Coverage Part.

When this insurance is excess, we will have no duty under this Coverage Part to defend any insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

5.   Premium Audit

a.   We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b.   Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c.   The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

d.   We may waive this condition at our option.

6.   Representations

By accepting this policy, you agree:

a.   The statements in the Declarations are accurate and complete;

b.   Those statements are based upon representations you made to us; and

c.   We have issued this policy in reliance upon your representations.

The unintentional error or omission in any information provided by you will not be deemed to be a misrepresentation. However, this provision does not affect our right to collect additional premium or to exercise our rights of cancellation or non-renewal.

7.   Separation Of Insureds

Except with respect to all exclusions contained within Section I – Coverages, Section V – Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a.   As if each Named Insured were the only Named Insured; and

b.   Separately to each insured against whom "claim" is made.

8.   Transfer Of Rights Of Recovery Against Others To Us

If any insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

9.   When We Do Not Renew

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

Includes copyrighted material of Insurance Services Office, Inc.
Copyright 2007, OneBeacon Insurance Group

SECTION VII – DEFINITIONS

1. "Auto" means:

   a. A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

   b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

   However, "auto" does not include "mobile equipment".

2. "Claim(s)" means an oral or written demand, including a "suit" for payment of money "damages.

3. "Damages" means money damages. "Damages" does not include any amount awarded as liquidated damages pursuant to any federal or state statute nor the multiple portion of any multiplied damage award.

4. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

5. "Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or by-products produced or released by "fungi".

6. "Health care and social services wrongful act" means an error, omission, or negligent act:

   a. in the performance of or failure to perform health care services by an "employee" or "volunteer worker" who is a first responder, nurse, jail nurse, emergency medical technician, or paramedic while acting within the scope of his or her duties for you;

   b. in the performance of or failure to perform social services including counseling, advice and instruction, by any licensed, certified, or trained "employee" or "volunteer worker" of your social services department, health and human services, health clinic or similar operation;

   c. in the handling of patients by an "employee" or "volunteer worker" who is a first responder, nurse, jail nurse, emergency medical technician or paramedic:

      (1) from the place where they are accepted for movement into or onto the means of transport,

      (2) during transport, and

      (3) from the means of transport to the place where they are finally delivered; and

   d. relating to the dispatching of, including the failure or refusal to dispatch, personnel to provide any of the above services.

7. "Law enforcement activity(ies)" means:

   a. Any official activity conducted in the course of your law enforcement operations;

   b. Any officially sanctioned off-duty activity conducted in the course of law enforcement operations;

   c. Ownership, maintenance, operation or use of any premises by your law enforcement operations;

   d. Any criminal prosecution activity by judicial officers, prosecuting attorneys, and staff, other than public defenders or criminal defense attorneys.

8. "Law enforcement wrongful act(s)" means any actual or alleged act, error, misstatement, misleading statement, omission, neglect or breach of duty by an insured arising from a "law enforcement activity".

9. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

10. "Loss adjustment expenses" means our expenses incurred to adjust a "claim" and include fees paid to attorneys, experts, and investigators used to defend a "suit". "Loss adjustment expenses" does not include the cost of our salaried claims staff and their office expenses or independent adjusters.

11. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

    a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    b. Vehicles maintained for use solely on or next to premises you own or rent;

    c. Vehicles that travel on crawler treads;

    d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

       (1) Power cranes, shovels, loaders, diggers or drills; or

       (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

    e.  Vehicles not described in Paragraph a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

        (1)  Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

        (2)  Cherry pickers and similar devices used to raise or lower workers;

    f.  Vehicles not described in Paragraph a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

    However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

        (1)  Equipment designed primarily for:

            (a)  Snow removal;

            (b)  Road maintenance, but not construction or resurfacing; or

            (c)  Street cleaning;

        (2)  Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

        (3)  Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

    However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

12.  "Related law enforcement wrongful acts" means any multiple, repeated, or continuous "law enforcement wrongful act" that is causally connected by facts or circumstances or a series of any "law enforcement wrongful acts" causally connected by the same facts or circumstances.

13.  "Suit" means a civil proceeding alleging "damages" to which this insurance applies. "Suit" includes:

    a.  An arbitration proceeding in which "damages" are claimed and to which the insured must submit or does submit with our consent; or

    b.  Any other alternative dispute resolution proceeding in which "damages" are claimed and to which the insured submits with our consent.

14.  "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

15.  "Volunteer worker" means a person who is not your "employee" and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

SECTION VIII – EXTENDED REPORTING PERIODS

1.  We will provide one or more Extended Reporting Periods, as described below, if:

    a.  This Coverage Part is cancelled or not renewed; or

    b.  We renew or replace this Coverage Part with insurance that:

        (1)  Has a Retroactive Date later than the date shown in the Declarations of this Coverage Part; or

        (2)  Does not apply to "law enforcement wrongful acts" on a claims-made basis.

2.  Extended Reporting Periods do not extend the policy period or change the scope of coverage provided. They apply only to "claims" for:

    a.  "Law enforcement wrongful acts" that take place before the end of the policy period but not before the Retroactive Date, if any, shown in the Declarations.

    Once in effect, Extended Reporting Periods may not be cancelled and the entire premium shall be deemed fully earned and non-refundable upon payment.

3.  A Basic Extended Reporting Period is automatically provided without additional charge. This period starts with the end of the policy period and lasts for sixty days. During this period, you will have the right, subject to part 2. of this section, to report "claims" made and consistent and in accordance with paragraph 2.a. of PART VI – CONDITIONS, any "law enforcement wrongful act" which may later result in a "claim".

The Basic Extended Reporting Period does not apply to "claims" that are covered under any subsequent insurance you purchase, or that would be covered but for exhaustion of the amount of insurance applicable to such "claims".

4. The Basic Extended Reporting Period does not reinstate or increase the Limits of Insurance.

5. A Supplemental Extended Reporting Period is available, but only by an endorsement and for an extra charge. This supplemental period starts when the Basic Extended Reporting Period, set forth in paragraph 3. above, ends.

   You must give us a written request for the endorsement within 60 days after the end of the policy period. The Supplemental Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due and you have fulfilled all other duties, and complied with all other conditions and requirements, under this Coverage Part.

   We will determine the additional premium in accordance with our rules and rates. In doing so, we may take into account the following:

   a. The exposures insured;

   b. Previous types and amounts of insurance;

   c. Limits of insurance available under this Coverage Part for future payment of "damages"; and

   d. Other related factors.

   The additional premium will not exceed 200% of the annual premium for this Coverage Part

   This endorsement shall set forth the terms, not inconsistent with this Section, applicable to the Supplemental Extended Reporting Period, including a provision to the effect that the insurance afforded for "claims" first received during such period is excess over any other valid and collectible insurance available under policies in force after the Supplemental Extended Reporting Period starts.

6. If the Supplemental Extended Reporting Period is in effect, we will provide the supplemental aggregate limits of insurance described below, but only for "claims" first received and recorded during the Supplemental Extended Reporting Period.

   The supplemental aggregate limits of insurance will be equal to the dollar amount shown in the Declarations in effect at the end of the policy period for such of the following limits of insurance for which a dollar amount has been entered:

   Each Law Enforcement Wrongful Act

   Annual Aggregate

   The LIMITS OF INSURANCE (Section V) provisions of this coverage part will be amended accordingly.

Includes copyrighted material of Insurance Services Office, Inc.
Copyright 2007, OneBeacon Insurance Group

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# INDIANA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

PUBLIC OFFICIALS ERRORS AND OMISSIONS LIABILITY COVERAGE PART
PUBLIC OFFICIALS ERRORS AND OMISSIONS COVERAGE PART (CLAIMS-MADE)

The following is added to SECTION VI – CONDITIONS

Cancellation Of Policies In Effect

   a.  90 Days Or Less

      If this policy has been in effect for 90 days or less, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

      (1) 10 days before the effective date of cancellation if we cancel for nonpayment of premium;

      (2) 20 days before the effective date of cancellation if you have perpetrated a fraud or material misrepresentation on us; or

      (3) 30 days before the effective date of cancellation if we cancel for any other reason.

   b.  More Than 90 Days

      If this policy has been in effect for more than 90 days, or is a renewal of a policy we issued, we may cancel this policy, only for one or more of the reasons listed below, by mailing or delivering to the first Named Insured written notice of cancellation at least:

      (1) 10 days before the effective date of cancellation if we cancel for nonpayment of premium;

      (2) 20 days before the effective date of cancellation if you have perpetrated a fraud or material misrepresentation on us; or

      (3) 45 days before the effective date of cancellation if:

         (a) There has been a substantial change in the scale of risk covered by this policy;

         (b) Reinsurance of the risk associated with this policy has been cancelled; or

         (c) You have failed to comply with reasonable safety recommendations.

NONRENEWAL

1.  If we elect not to renew this policy, we will mail or deliver to the first Named Insured written notice of nonrenewal at least 45 days before:

   a.  The expiration date of this policy, if the policy is written for a term of one year or less; or

   b.  The anniversary date of this policy, if the policy is written for a term of more than one year.

2.  We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# INDIANA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

LAW ENFORCEMENT LIABILITY COVERAGE PART
LAW ENFORCEMENT LIABILITY COVERAGE PART (CLAIMS-MADE)

The following is added to SECTION VI – CONDITIONS

Cancellation Of Policies In Effect

    a.  90 Days Or Less

        If this policy has been in effect for 90 days or less, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

        (1)  10 days before the effective date of cancellation if we cancel for nonpayment of premium;

        (2)  20 days before the effective date of cancellation if you have perpetrated a fraud or material misrepresentation on us; or

        (3)  30 days before the effective date of cancellation if we cancel for any other reason.

    b.  More Than 90 Days

        If this policy has been in effect for more than 90 days, or is a renewal of a policy we issued, we may cancel this policy, only for one or more of the reasons listed below, by mailing or delivering to the first Named Insured written notice of cancellation at least:

        (1)  10 days before the effective date of cancellation if we cancel for nonpayment of premium;

        (2)  20 days before the effective date of cancellation if you have perpetrated a fraud or material misrepresentation on us; or

        (3)  45 days before the effective date of cancellation if:

            (a)  There has been a substantial change in the scale of risk covered by this policy;

            (b)  Reinsurance of the risk associated with this policy has been cancelled; or

            (c)  You have failed to comply with reasonable safety recommendations.

NONRENEWAL

1.  If we elect not to renew this policy, we will mail or deliver to the first Named Insured written notice of nonrenewal at least 45 days before:

    a.  The expiration date of this policy, if the policy is written for a term of one year or less; or

    b.  The anniversary date of this policy, if the policy is written for a term of more than one year.

2.  We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

POLICY NUMBER: 791-00-03-08-0001

@vantage for Government Risks

## EXCESS LIABILITY COVERAGE PART DECLARATIONS

### LIMITS OF INSURANCE

Aggregate Limit:  $4,000,000      All Claims excess of Underlying Insurance

Each Claim Limit: $4,000,000      Each Claim excess of Underlying Insurance

### Schedule of Underlying Insurance

| Coverage | Carrier/Policy Number | Policy Period/Retroactive Date | Limits of Insurance |
|---|---|---|---|
| Commercial General Liability | | | See ASC 00 05 01 98 |
| Public Officials Liability | | | See APR 005 02 99 |
| Law Enforcement Liability | | | See APR 005 02 99 |
| Employers Liability | | | Not Covered |

Forms applicable to the Excess Liability Coverage:
See ASC 00 11 0 98, Schedule 11

3 2-72-0010 01/25/2011  MSP CPW PR 1.000

Copyright 2007, OneBeacon Insurance Group
MANUSCRIPTED

# SCHEDULE 11

Effective 01/09/2011 , this schedule forms a part of Policy No. 791-00-03-08-0001
(At the time stated in the policy)

issued to

COMMISSIONERS OF CLINTON COUNTY,
INDIANA


Producer: GREGORY & APPEL, INC.


by OneBeacon America Insurance Company

Excess Liability Declarations GRS EL 100 07 07,
Continued:

Forms Applicable to the Excess Liability Coverage:

GRS EL 100 07 07        EXCESS LIABILITY COVERAGE PART DECLARATIONS
GRS EL 101 07 07        EXCESS LIABILITY COVERAGE FORM
GRS EL IN 01 07 07      IN CHANGES - CANCELLATION AND NONRENEWAL
ASC 00 11 01 98         Schedule 11 - EXCESS POLICY LIST OF FORMS


3 2-72-0010 01/25/2011   MSP CPW PR 1.000

POLICY NUMBER: 791-00-03-08-0001

**Non-Policy Forms**

The following forms were sent to you with your policy, but they are not part of your policy. They contain information which you may find useful about your policy, insurance in general, your premium payments, or other topics of interest. These forms do not give you insurance coverage. Refer to the forms that are part of your policy to determine if a loss is covered, and what we will pay, as well as your rights and duties.

| | |
|---|---|
| CLD 134 01 08 | POLICYHOLDER DISCLOSURE NOTICE - TERRORISM INSURANCE COVERAGE |
| IL N 120 10 05 | IN NOTICE TO POLICYHOLDERS - FILING OF COMPLAINTS-INS DEPT |
| VCA U 013 IN 07 09 | IN UM COVERAGE & UIM COVERAGE SELECTION / REJECTION |
| VGN 002 01 10 | SPECIAL PROPERTY PLUS COVERAGE FORM QUICK REFERENCE GUIDE |
| VGN 049 07 10 | NOTICE - IMPORTANT CHANGES IN YOUR @VANTAGE POLICY |
| VGN 050 03 10 | AUTOMOBILE POLICYHOLDER NOTICE 2010 AUTO MULTISTATE REVISION |
| VIL 105 04 08 | DATA BREACH THEFT RESOLUTION NOTICE |

3 2-72-0010 01/25/2011  MSP CPW PR 1.000

Copyright 1998, OneBeacon Insurance Group
MANUSCRIPTED

# EXCESS LIABILITY COVERAGE FORM
## for Government Risks

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered. We have no duty to provide coverage unless there has been full compliance with all the SECTION V – CONDITIONS contained in this coverage part.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to SECTION VI – DEFINITIONS.

## SECTION I – COVERAGE

A.  Insuring Agreement – Excess Liability

1.  We will pay those sums that the insured becomes legally obligated to pay as "damages" in excess of all "underlying insurance", but only after all "underlying insurance" has been exhausted by the actual payment of the Limits of Liability of the "underlying insurance".

2.  This excess liability insurance coverage is subject to the insuring agreement terms, exclusions, limitations, conditions, and definitions contained within the "underlying insurance" except as described in SECTION III – EXCLUSIONS.

3.  The amount we will pay for "damages" is limited as described in SECTION IV – LIMITS OF INSURANCE.

## SECTION II – DEFENSE

1.  We have no duty to defend or assume charge of any settlement or defense of any "claim" made, "suit" brought, or proceedings instituted against the insured. However, we have the right, but not the duty, and will be provided the opportunity to associate with the insured in the investigation, settlement or defense of any "claim", "suit" or proceeding which in our opinion may create liability under this excess liability policy, whether or not the Limits of Liability of the "underlying insurance" have been exhausted.

2.  If the defenses are included within the Limit(s) of Liability of any "underlying insurance" by the terms of that "underlying insurance", any defense expenses we incur under this policy in excess of that "underlying insurance" will reduce the applicable Limit of Insurance of this policy.

3.  If the defense expenses are not included within the Limit(s) of Liability of any "underlying insurance" by the terms of that "underlying insurance", any defense expenses we incur under this policy in excess of that "underlying insurance" will not reduce the applicable Limit of Insurance of this policy.

## SECTION III – EXCLUSIONS

This insurance does not apply to:

1.  Automobile Underinsured or Uninsured Motorists Laws

    Any "claim" arising directly or indirectly or in any way related to an obligation under an automobile underinsured motorists and or uninsured motorists regulation or law.

2.  Automobile Medical Payments or No-Fault

    Any "claim" arising directly or indirectly or in any way related to an obligation under any first-party automobile medical payments or automobile personal injury protection or other automobile no-fault regulation or law.

3.  No Coverage Provided by Underlying Insurance

    Any "claim" which is not covered for any reason by any "underlying insurance" to this policy.

4.  Failure to Supply

    Any "claim" arising directly or indirectly from the failure to adequately supply electricity, gas, oil, steam, or water service. However, we won't apply this exclusion if the failure to supply results from accidental injury to tangible property owned or used by any insured to obtain, produce, process or transmit such service.

5.  Pollution

    (1) Any "claim" arising directly or indirectly which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

Copyright 2007, OneBeacon Insurance Group
MANUSCRIPTED

(2) Any loss, cost or expense arising out of any:

    (a) Request, demand, order or statutory or regulatory requirement that any insured or other test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

    (b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

6.  Sexual Abuse

Any "claim" arising directly or indirectly out of "sexual abuse" of any person; or the negligent:

    (a) employment;

    (b) investigation;

    (c) supervision;

    (d) reporting to the proper authorities, or failing to so report;

    (e) retention;

of any person for whom any insured is or ever was legally responsible.

## SECTION IV – LIMITS OF INSURANCE

1.  The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

    a.  Insureds;

    b.  "Claims" made or "suits" brought; or

    c.  Persons or organizations making "claims" or bringing "suits".

2.  The Aggregate Limit shown in the Declarations is the most we will pay for all "damages" for all "claims" or "suits" in excess of the "underlying insurance".

3.  Subject to 2. above, The Each Claim Limit shown in the Declarations is the most we will pay for "damages" in excess of the underlying Each Occurrence, Each Offense, Each Health Care and Social Services Wrongful Act, Each Wrongful Act, Each Employment Practices Offense, Each Administration Offense, Each Law Enforcement Wrongful Act or Each Accident Limits of Insurance that may apply as "underlying insurance".

## SECTION V – CONDITIONS

1.  Bankruptcy

Bankruptcy or insolvency of the insured or the insured's estate will not relieve us of our obligations under this Coverage Part.

2.  Duties In The Event Of A Claim

    a.  You must see to it that we are notified as soon as practicable of an occurrence, offense, wrongful act, or accident which may result in a "claim". To the extent possible, notice should include:

        (1) How, when and where the occurrence, offense, wrongful act or accident took place;

        (2) The names and addresses of any injured persons and witnesses; and

        (3) The nature and location of any injury or damage arising out of the occurrence, offense, wrongful act or accident.

    b.  If a "claim" is made or "suit" is brought against any insured, you must:

        (1) Immediately record the specifics of the "claim" or "suit" and the date received; and

        (2) Notify us as soon as practicable.

    You must see to it that we receive written notice of the "claim" or "suit" as soon as practicable.

    c.  You and any other involved insured must:

        (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit";

        (2) Authorize us to obtain records and other information;

        (3) Cooperate with us in the investigation or settlement of the "claim" or defense against the "suit"; and

Copyright 2007, OneBeacon Insurance Group

   (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

  d.  No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3.  Legal Action Against Us

   No person or organization has a right under this Coverage Part:

  a.  To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

  b.  To sue us on this Coverage Part unless all of its terms have been fully complied with.

   A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

4.  Other Insurance

   The insurance provided by this policy is excess over any other collectible insurance.

   We will pay only our share of the amount of loss, if any, that exceeds the sum of:

  a.  The total amount that all other insurance would pay in the absence of this insurance; and

  b.  The total of all deductible and self-insured amounts under the other insurance.

   If we share the loss, we will do so by equal share contribution if allowed by the other insurance. If equal share contribution is not permitted, we will contribute by the ratio our limit bears to the total applicable limits of all insurance.

   Other insurance means insurance, or the funding of losses, that is provided by or through:

  •  Another insurance company;

  •  Any of our affiliated insurance companies;

  •  Any risk retention group;

  •  Any self-insurance, group self-insurance, or similar risk transfer approach, other than any funded by you and to which this coverage part applies.

   However, we will not consider umbrella insurance, or excess insurance, that you bought specifically to apply in excess of the limits of coverage that apply under this agreement to be other insurance.

5.  Premium Audit

  a.  We will compute all premiums for this Coverage Part in accordance with our rules and rates.

  b.  Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

  c.  The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

  d.  We may waive this condition at our option.

6.  Representations

   By accepting this policy, you agree:

  a.  The statements in the Declarations are accurate and complete;

  b.  Those statements are based upon representations you made to us; and

  c.  We have issued this policy in reliance upon your representations.

   The unintentional error or omission in any information provided by you will not be deemed to be a misrepresentation. However, this provision does not affect our right to collect additional premium or to exercise our rights of cancellation or non-renewal.

7.  Separation Of Insureds

   Except with respect to all exclusions contained within SECTION III – EXCLUSIONS, SECTION IV – LIMITS OF INSURANCE, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

    a. As if each Named Insured were the only Named Insured; and

    b. Separately to each insured against whom "claim" is made.

8. Transfer Of Rights Of Recovery Against Other To Us

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

9. When We Do Not Renew

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

10. Maintenance of Underlying Insurance

    a. This policy is subject to the same representations as are contained in any application for any "underlying insurance" and the same insuring agreement terms, exclusions, limitations, conditions, and definitions as are contained within the "underlying insurance". In no event will this Coverage Part grant broader coverage than would be provided by "underlying insurance".

    b. "Underlying insurance" must be maintained in full effect during the policy period except for any reduction or exhaustion of any aggregate limits contained within "underlying insurance" due to the payment of "damages".

11. Extended Reporting Periods

When "underlying insurance" provides coverage on a claims-made basis, we will provide an extended reporting period(s) to the extent the "underlying insurance" provides an extended reporting period. An additional premium will apply.

## SECTION VI -- DEFINITIONS

1. "Claim(s)" means a written or oral notice including a "suit" demanding payment of money to compensate for "damages".

2. "Damages" means money damages. "Damages" does not include any amount awarded as liquidated damages pursuant to any federal or state statute nor the multiple portion of any multiplied damage award.

3. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

4. "Sexual Abuse" means any actual, attempted or alleged sexual conduct by a person, or by persons acting in concert, which causes injury. "Sexual Abuse" includes sexual molestation, sexual assault, sexual exploitation or sexual injury, but does not include "sexual harassment".

5. "Sexual harassment" means any actual, attempted, or alleged unwelcome sexual advances, requests for sexual favors, or other conduct of a sexual nature by a person, or persons acting in concert, which causes injury. "Sexual harassment" includes:

    a. The above conduct when submission to or rejection of such conduct is made either explicitly or implicitly a condition of a person's employment, or a basis for employment decisions affecting a person; or

    b. The above conduct when such conduct has the purpose or effect of unreasonably interfering with person's work performance or creating an intimidating, hostile or offensive work environment.

6. "Suit" means a civil proceeding alleging "damages" to which this insurance applies. "Suit" includes:

    a. An arbitration proceeding in which "damages" are claimed and to which the insured must submit or does submit with our consent; or

    b. Any other alternative dispute resolution proceeding in which "damages" are claimed and to which the insured submits with our consent.

7. "Underlying insurance" means the Schedule of Liability insurance policies, carriers, policy terms and policy limits shown in the Declarations for this Coverage Part.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# INDIANA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

EXCESS LIABILITY COVERAGE FORM

The following is added to SECTION V – CONDITIONS

Cancellation Of Policies In Effect

    a. 90 Days Or Less

      If this policy has been in effect for 90 days or less, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

      (1) 10 days before the effective date of cancellation if we cancel for nonpayment of premium;

      (2) 20 days before the effective date of cancellation if you have perpetrated a fraud or material misrepresentation on us; or

      (3) 30 days before the effective date of cancellation if we cancel for any other reason.

    b. More Than 90 Days

      If this policy has been in effect for more than 90 days, or is a renewal of a policy we issued, we may cancel this policy, only for one or more of the reasons listed below, by mailing or delivering to the first Named Insured written notice of cancellation at least:

      (1) 10 days before the effective date of cancellation if we cancel for nonpayment of premium;

      (2) 20 days before the effective date of cancellation if you have perpetrated a fraud or material misrepresentation on us; or

      (3) 45 days before the effective date of cancellation if:

        (a) There has been a substantial change in the scale of risk covered by this policy;

        (b) Reinsurance of the risk associated with this policy has been cancelled; or

        (c) You have failed to comply with reasonable safety recommendations.

NONRENEWAL

1. If we elect not to renew this policy, we will mail or deliver to the first Named Insured written notice of nonrenewal at least 45 days before:

    a. The expiration date of this policy, if the policy is written for a term of one year or less; or

    b. The anniversary date of this policy, if the policy is written for a term of more than one year.

2. We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

Includes copyrighted material of Insurance Services Office, Inc.
Copyright 2007, OneBeacon Insurance Group
MANUSCRIPTED

 OneBeacon
I N S U R A N C E

OneBeacon America Insurance Company

1 Beacon Lane
Canton, MA 02021-1030

Insured Name and Address:
COMMISSIONERS OF CLINTON COUNTY,
INDIANA
C/O THERESA MARTIN
125 COURTHOUSE SQ
FRANKFORT, IN 46041-1942

Policy Number: 791-00-03-08-0001

# POLICYHOLDER DISCLOSURE
# NOTICE OF TERRORISM INSURANCE COVERAGE

Coverage for acts of terrorism is included in your policy.  You are hereby notified that under the Terrorism Risk Insurance Act (the Act), as amended in 2007, the definition of act of terrorism has changed.  As defined in Section 102(1) of the Act, the term "act of terrorism" means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

COVERAGE TO BE PROVIDED BY THIS POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT IN ACCORDANCE WITH A FORMULA ESTABLISHED UNDER THE ACT, AS AMENDED.  UNDER THE FORMULA, THE UNITED STATES GOVERNMENT WOULD PAY 85% OF COVERED TERRORISM LOSSES THAT EXCEED THE STATUTORILY IMPOSED DEDUCTIBLE FOR WHICH THE INSURANCE COMPANY IS RESPONSIBLE. THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSSES COVERED BY THE UNITED STATES GOVERNMENT UNDER THE ACT.

THE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES EXCEEDS $100 BILLION IN ANY ONE CALENDAR YEAR. IF THE AGGRE-GATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.

The premium required for your terrorism coverage is: $2,244                .

Possibility of Additional or Return Premium

The premium shown above is calculated based in part on the United States participation in payment of terrorism losses as set forth in the Terrorism Risk Insurance Act. The federal program established by the Act is scheduled to terminate at the end of 12/31/14. If the federal program terminates or if the level or terms of federal participation change, the estimated premium shown above may not be appropriate.

If this policy contains a Conditional Exclusion, continuation of coverage for certified acts of terrorism, or termination of such coverage, will be determined upon disposition of the federal program, subject to the terms and conditions of the Conditional Exclusion. If this policy does not contain a Conditional Exclusion, coverage for certified acts of terrorism will continue. In either case, when disposition of the federal program is determined, we will recalculate the estimated premium shown above and will charge additional premium or refund excess premium, if indicated.

If we notify you of an additional premium charge, the additional premium will be due as specified in such notice.

You need to take no action with respect to this notice. You will receive a bill for your policy premium which will include the above amount required for your terrorism coverage.

If you have any questions about this notice, please contact your agent.

3 2-72-0010 01/25/2011  MSP CPW PR 1.000



COMMISSIONERS OF CLINTON COUNTY,
INDIANA
C/O THERESA MARTIN
125 COURTHOUSE SQ
FRANKFORT, IN 46041-1942

Policy Number: 791-00-03-08-0001

ANNOUNCING A POWERFUL SOLUTION FOR A REAL RISK

Despite your best efforts to protect the personally identifiable information that your employees and customers entrust to you, this confidential information can sometimes be compromised. The good news is that OneBeacon has you covered with a powerful new solution that combines data breach expense protection with effective response services.

Your OneBeacon Insurance policy now includes coverage for the costs of responding to a data breach, as well as services to help you prepare for a potential incident and notify affected individuals should a breach occur.

Security Breach Management Services facilitate your company's response to a data breach. Identity Theft Resolution Services provide unlimited access to highly experienced fraud specialists for you and your employees, and their resident family members, if there is a personal need for expert assistance with identity-related concerns. These services are administrated by Identity Theft 911, a leader in identity management.

In addition, you now have access to Identity Theft 911's Web site, which delivers news alerts, articles and monthly newsletters along with useful tips and preventative guidelines. Visit www.onebeacon-myidentityservices.com using these login codes:

  Username -- cra2693
  Password -- rw3x26

In the Event of a Data Breach
Should your business experience a data breach, please report it immediately by calling our 24-hour claim center at 1.877.248.3455. We will direct you to the Identity Theft 911 Web site to begin the response process.

How Your Employees Obtain Assistance
The enclosed information sheet further explains the Identity Theft Resolution Services that are available for your staff. Please share it with your employees or post it in a prominent area.

Should your employees need assistance due to an identity theft incident, they will call 1.800.405.6108 and provide your company's Group Access Code: 791-00-03-08-0001.

At OneBeacon we're committed to building long-term relationships and satisfying our customers' business insurance needs through innovative products and value-added services. Thank you for allowing us to be your insurance provider.

Drew Carnase, Senior Vice President
Commercial Middle Market

Copyright 2007, OneBeacon Insurance Group
MANUSCRIPTED



# IDENTITY THEFT RESOLUTION SERVICES
## (POWERED BY IDENTITY THEFT 911)

Are you or your resident family members at risk for identity theft? Do you need expert assistance with an identity-related concern? IDENTITY THEFT RESOLUTION SERVICES from Identity Theft 911 give you one-on-one assistance in the following situations.

Access Phone Number:  1.800.405.6108
Group Access Code:  791-00-03-08-0001

If you or a resident family member suffer the loss or theft of private personal data, contact Identity Theft 911 for proactive guidance that can include Fraud Alert service. If you wish, a fraud specialist can assist in placing a free fraud alert on your credit file to reduce the risk of fraudulent accounts opened in your name. This service also includes additional preventative measures and one-on-one assistance, depending on the risk.

If you or a resident family member become the victim of identity theft or account takeover, contact Identity Theft 911 for Identity Restoration Case Management services. A fraud specialist will guide you through the process of restoring your identity and handle all of the work, including completed documentation and notification assistance. Victims also receive one year of free credit monitoring, as well as free fraud monitoring of over 1,000 public databases.

Learn How To Protect Your Identity
We recommend that you regularly visit OneBeacon and Identity Theft 911's comprehensive resource and knowledge library -- www.onebeacon-identitytheft911.com -- for the latest media alerts, identity theft tips, in-depth newsletters and much more.

And keep this access information handy in case you ever need help with an identity-related problem.

Access Phone Number:  1.800.405.6108
Group Access Code:  791-00-03-08-0001

OneBeacon Insurance Group makes no guarantee of results and assumes no liability in connection with either the information or assistance provided by Identity Theft 911. Any and all external Web sites or sources referred to herein are for informational purposes only.

VIL 105 04 08                      Copyright 2007, OneBeacon Insurance Group                      Page 2 of 2

POLICY NUMBER: 791-00-03-08-0001

# INDIANA NOTICE TO POLICYHOLDERS REGARDING FILING COMPLAINTS WITH THE DEPARTMENT OF INSURANCE

Questions regarding your policy or coverage should be directed to:

| |
|---|
| Company Name: OneBeacon America Insurance Company |
| Contact Number: (866) 971-6247 |

If you:

(a) Need the assistance of the governmental agency that regulates insurance; or

(b) Have a complaint you have been unable to resolve with your insurer;

you may contact the Department of Insurance by mail, telephone or E-mail:

> State of Indiana Department of Insurance
> Consumer Services Division
> 311 West Washington Street, Suite 300
> Indianapolis, Indiana 46204

> Consumer Hotline: (800) 622-4461;  (317) 232-2395

> Complaints can be filed electronically at www.in.gov/idoi.

© ISO Properties, Inc., 2005
MANUSCRIPTED

STATE OF INDIANA ) CLINTON COUNTY SUPERIOR COURT
)
COUNTY OF CLINTON ) CAUSE NO: 12D01-1206-ct-640


DIANA ANES, PERSONAL REPRESENTATIVE )
OF THE ESTATE OF DENNIS ANES, DECEASED, )
)
Plaintiff, )
)
v. )
)
THE COUNTY OF CLINTON, JEFF WARD, as the )
SHERIFF OF CLINTON COUNTY, THE CLINTON )
COUNTY SHERIFF'S DEPARTMENT, STEVE )
CATRON, KREIG KING and KREIGH SLOGGETT, )
)
Defendants. )

## NOTICE OF REMOVAL

Come now the defendants, County of Clinton, Jeff Ward, as Sheriff of Clinton County, the

Clinton County Sheriff's Department, Steve Catron, Kreig King and Kreigh Sloggett, and

provide notice of the removal of this cause from the Clinton Superior Court to the United States

District Court for the Southern District of Indiana, Indianapolis Division, pursuant to 28 U.S.C. §§

1441 and 1446. This court is therefore without jurisdiction to undertake further proceedings with

respect to this cause.


Respectfully submitted,

STEPHENSON MOROW & SEMLER

James S. Stephenson - Attorney No: 11434-98
Attorney for Defendants
County of Clinton, Jeff Ward, Sheriff of Clinton
County, the Clinton County Sheriff's Department,
Steve Catron, Kreig King and Kreigh Sloggett

## CERTIFICATE OF SERVICE

I certify that a true and exact copy of the foregoing was served upon all parties of record this

26th day of July, 2012, and deposited same in the U.S. mail, first-class, postage prepaid to:

> Steven P. Meyer
> Elizabeth B. B. Searle
> BALL-EGGLESTON, P.C.
> 201 Main Street, Suite 810
> P. O. Box 1535
> Lafayette, IN  47902

> James S. Stephenson

STEPHENSON MOROW & SEMLER
3077 East 98th Street, Suite 240
Indianapolis, IN 46280
(317) 844-3830
Fax: (317) 573-4194
jstephenson@stephlaw.com

12-6266.bb